## HEGARD v. CALIFORNIA INS. CO.*

### No. 11,073; June 29, 1886.

#### 11 Pac. 594.

**Evidence—Judicial Notice of Legal Distances.**—Courts in California will take judicial notice of the legal distances from place to place in the state of California, as established by the Political Code in sections 150 to 202, inclusive, for the purpose of computing the time within which notice of intention to move for a new trial must be served.

**Fire Insurance—Misrepresentations.**—Findings in an Action on an Insurance policy that plaintiff had not misrepresented his ownership of the property insured, nor its value, held sustained by the evidence.

**Fire Insurance—Action on Policy—Complaint—Defects Cured by Answer.**—Where a plaintiff in his complaint fails to state material facts, as, in an action on an insurance policy, failing to set out or attach and make a part of the complaint the application for insurance,· so that no cause of action is stated, if these facts are supplied by the averments of the answer, the omission is immaterial, and the defect is cured.

**Fire Insurance—Action—Matters of Evidence not to be Alleged.**—The fact that a policy of insurance declared the measure of recovery for loss sustained on an insurance policy must be "in no case greater than the actual damage to or cash value of the property at the time of the fire," only established a rule as to the proof necessary to be made in order to show the damage or loss sustained, and it is unnecessary to allege in the pleading the actual cash value of the premises, this being a matter of evidence.

**Fire Insurance.**—If, in an Action on an Insurance Policy Covering Several Classes of property, the complaint states the amounts of the losses upon the various kinds of property insured separately, and demand for judgment for the aggregate sum of such losses is made, this will be sufficient for the purpose of informing the defendant how much, and·on what account, the plaintiff claims to recover it.

**Fire Insurance—Recovery on Policy—Actual Cash Value.**—Where an insurance policy provides that in no case shall the recovery be greater than the actual damage or cash value of the property, a finding that the loss sustained on account of the destruction of a building by fire was a certain sum, the amount insured for, is sufficient, and the court need not state the evidential fact that the cash value of the property when destroyed was a certain sum.

*For subsequent opinion in bank, see 72 Cal. 535, 14 Pac. 359.

Fire Insurance—Depreciation of Property—Evidence.—Under an insurance policy providing that "the cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same, and in case of the depreciation of such property, from use or otherwise, a suitable deduction from the cash cost of replacing the same shall be made to ascertain the actual cash value," the court does not err in refusing to allow the defendant to prove depreciation in the value of the building which occurred anterior to the time of its being insured.

Fire Insurance—Fixtures.—Parol Evidence is not Admissible as to what is meant by the words "barroom fixtures" as used in an insurance policy.

APPEAL from Superior Court, City and County of San Francisco.

E. W. McGraw for appellant; W. W. Kellogg and R. H. F. Variel for respondent.

FOOTE, C.—The respondent, Hegard, makes the point that this cause should be considered here upon the judgment-roll only, for the reason that the notice of intention to move for a new trial on the part of the appellant, although served within the statutory period of ten days, was not so filed. From the statement on motion for a new trial it appears that findings were filed on the fifth day of February, 1885; that the attorneys for Hegard, at all times during the pendency of this action, resided and had their offices at Quincy, Plumas county, state of California, and that the attorney for the defendant resided and had his office at San Francisco, in the same state, and there was at all times regular communication by mail between those two places; that on the sixth day of February, 1885, one of the attorneys for the plaintiff deposited in the postoffice at Quincy an envelope addressed to the defendant's attorney at San Francisco, California, which envelope contained two duplicate notices signed "W..W. Kellogg and R. H. F. Variel, Attorneys for Plaintiff," to the effect that the trial court, on February 5, 1885, had filed its findings and decision in favor of the plaintiff, which notices were entitled in the proper case, and the envelope also contained a note from Mr. Variel to Mr. McGraw, the defendant's attorney, requesting him to indorse service of notice of decision, and return the same to him (Variel). That en-

velope and its contents were received by Mr. McGraw at San
Francisco on the 10th of February, 1885, and he indorsed
acknowledgment of the receipt of one of the notices as of that
date, and on the 16th of the same month mailed it, and a no-
tice of intention to move for a new trial in the cause, to Mr.
Variel at Quincy, California, prepaying the postage thereon.
That notice was in due and proper form, and specified that
the motion would be made on a statement thereafter to be pre-
pared, and would be made on the following grounds: Insuffi-
ciency of the evidence to justify the decision of the court, and
that it was against law; error in law occurring at the trial,
and excepted to by the defendant.   On said February 16th,
Mr. McGraw also mailed, at San Francisco, a duplicate of
that notice of intention to move for a new trial, together with
a request to file the same, to the county clerk at Quincy,
California.   Mr. Variel received the notice addressed to him
on the night of February 20, 1885.   The county clerk re-
ceived that addressed to him on February 21, 1885, and filed
it on that day.   On February 24, 1885, defendant caused to
be served on R. H. F. Variel at Quincy aforesaid, by the
sheriff of Plumas county, a certified copy of the notice of
intention, which the county clerk had filed as above stated.
Mr. Kellogg was not at any time during the month of Feb-
ruary, 1885, in Plumas county, but (as was known by the at-
torney for defendant) was at Sacramento, California, per-
forming his duties as a member of the state Senate.

The contention of the respondent is that, as it appears
from the record that the notice of motion to move for a new
trial was not filed one day after the statutory time, the appel-
lant cannot be heard here on its appeal from the order refus-
ing a new trial; that there is no evidence of a proper character
in the record which shows that Quincy, in Plumas county, is
twenty-five miles or any other distance from San Francisco;
and that this court will not take judicial notice of the legal
distances from place to place in the state of California as es-
tablished by the Political Code in sections 150 to 202, in-
clusive.   In support of this proposition the case of Neely v.
Naglee, 23 Cal. 152, is cited.   There this court held that the
statute of 1858 establishing legal distances in this state from
each county seat to the capital, lunatic asylum, and state
prison, had no application to the question of notice then be-

fore the court, but referred to the amount of mileage that county treasurers and sheriffs might charge for certain purposes.

The sections of the Political Code, supra, established the legal distances therein set out without any qualification, and hence they are established for any and all purposes. By section 177 thereof it appears that the legal distance from Quincy, the county seat of Plumas county, to Sacramento, is one hundred and thirty-six miles; by section 182, same code, that San Francisco is eighty-four miles from Sacramento. The legislature, in fixing the boundaries of the different counties of this state, does not locate Plumas county as touching Sacramento county at any point, nor San Francisco county as adjoining either Sacramento or Plumas county; and, as geographical facts, it is well known that Plumas county is in the northeastern part of this state, and that San Francisco is on the bay of that name near the Pacific ocean, southwesterly from the former county, and that several other counties intervene between them. And Quincy is established by law as the county seat of Plumas county, and San Francisco as that of the county of the same name; thus making those points well known geographically.

If San Francisco, in the absence of all judicial knowledge as to its geographical position, was presumed to be eighty-four miles in a direct line between Sacramento and Quincy, the first mentioned would still appear to be fifty-two miles from Quincy, which would give one day more of time in which to file the notice in question than was actually taken. It appears, therefore, proper that this court should take judicial notice of those things established by law, as being such as ought to be generally known within the limits of its jurisdiction, and therefore should hold that the notice objected to as insufficient was filed and served in time.

The action under consideration was commenced to recover for loss by fire on an insurance policy issued to Hegard by the appellant. The plaintiff recovered a judgment for nineteen hundred and fifty dollars, and from that, and an order denying a new trial, the defendant appealed.

In the answer it was pleaded, in bar of the plaintiff's right to recover, that the latter had overvalued the property insured, and was not the sole owner of the building burned,

which was a portion of such property. Upon both of those contentions the court found against the defendant.

The policy recites, among other things, that "reference is had to application and survey No. ——, hereby made a part of this policy, and a warranty by the assured. The application and survey, if referred to in this policy, shall be considered a part of it, and a representation by the assured. If the assured in a written or verbal application for insurance, or by a survey, plan, or description, makes any erroneous representations, . . . . or overvalues the property, . . . . or if the interest of the assured be any other than the entire unconditional and sole ownership of the property, and is not so expressed in the written portion of the policy, . . . . or if the building insured stands upon leased ground, and is not so represented to the company, and so expressed in the written portion of this policy, then, in every such case, this policy shall be void."

The interest of the assured in the property insured, including the building and the amount of insurance, was described in the written portion of the policy as follows: "$2,000; $1,200 on his one and one-half story frame building occupied by the assured as a saloon and chop-house, situate on the S. side of Main street, in the town of Quincy, Plumas Co., Cala.; $250 on his bar-room fixtures; $400 on his stock of liquors and cigars; and $150 on his stove and cooking utensils, counter, tables, and chairs, all while contained in the above-described building. It is understood that the above-described building stands on leased ground." It will be seen, therefore, that the assured did not represent himself as the owner of the land on which the building stood, and the defendant was thus informed that the plaintiff claimed the building only, and not the land.

There is some apparent conflict between the statements which the latter made in his affidavit of proof of loss, and those contained in a certain deed and agreement introduced in evidence, and his oral statement when testifying as a witness on the trial of the cause; but the court heard his testimony, observed his manner, conduct, and method of testifying, and must have come to the conclusion that there had been no dishonest or intentional misrepresentation on his part as to his ownership of the building insured at any time, and

must have believed his statement and explanations on the point as to how he was really the owner of the entire building, as separate from any interest in the land on which it stood, and we cannot say that such conclusion, or the finding upon this fact, in the case, was wrong. Nor do we perceive that the trial court was not warranted from all the evidence in finding that there was no such overvaluation by the plaintiff of the property insured as would render the policy void on that account: Clark v. Phoenix Co., 36 Cal. 176; National Bank v. Insurance Co., 95 U. S. 673, 24 L. Ed. 563.

The appellant further contends that upon the judgment-roll reversible errors appear as follows: In that the complaint did not have attached thereto as an exhibit, or otherwise made a part thereof, the application for insurance, within the rule established by this court in Gilmore v. Lycoming Ins. Co., 55 Cal. 124; in that the complaint contained no allegation of a loss within the policy, because, as appellant alleges, no allegation appears therein as to any value, or actual cash value, of any of the property; in that no finding was made by the court of the cash or any other value of the building insured. As to all those positions, thus assumed, we are of opinion that they are not well taken.

The plaintiff, it is true, did not follow the rule of pleading as required in the case in 55 Cal., supra, but the defendant in its answer set out the tenor and effect of the application, and pleaded two breaches of the contract of insurance by the assured, based thereon, in bar of the plaintiff's right to recover, and evidence upon all the issues thus raised by the pleadings was heard and passed upon by the court, as shown by the findings, and the defect in the complaint was cured by the averments of the answer: Pom. Rem., sec. 579.

The complaint, we think, contains all the necessary allegations, under the policy, as to value of property insured, and loss occasioned by its being burned. The fact that the policy declared the measure of recovery for loss sustained must be "in no case greater than the actual damage to or cash value of the property at the time of the fire," only established a rule as to the proof necessary to be made in order to show the damage or loss sustained, and it was unnecessary to allege matters of evidence in the pleading.

In the complaint the amounts of the losses upon the various kinds of property insured were stated separately, and demand for judgment for the aggregate sum of such losses was made, and that was sufficient for the purpose of informing the defendant how much, and on what account, the plaintiff claimed to recover against it: Boone, Code Pl., sec. 18. The court found that the loss sustained by the plaintiff on account of the destruction of his building by fire was twelve hundred dollars, the amount it was insured for; and, more, it does not seem necessary that the learned judge should have gone further, and stated the evidential fact that its cash value, when so destroyed, was a certain sum.

The evidence relative to the value of the building when burned was pertinent as far as it went, and tended to prove the loss as claimed, and we do not feel warranted in condemning the findings upon that matter as not being supported by evidence. Nor do we think the court erred in refusing to allow the defendant to prove depreciation in the value of the building, which occurred anterior to the time of its being insured.

The policy, with reference to measure of recovery for loss of the building, reads as follows: "The cash value of property destroyed or damaged by fire shall in no case exceed what would be the cost to the assured, at the time of the fire, of replacing the same; and in case of the depreciation of such property from use or otherwise, a suitable deduction from the cash cost of replacing the same shall be made to ascertain the actual cash value."

We have been cited to no case, nor have we been able to find any after diligent search, which declares what construction shall be given to such language in its entirety as to the measure of damages. But it seems fair to conclude that the parties to this contract, when they entered into it, had in view the value of the building as it then stood, and that they did not intend to provide for any deduction for depreciation in value thereof which had occurred from the time when it was built, many years before that time, up to that when it was insured. It is much more reasonable, and fairer to all parties, to construe that language (so far as it relates to the question of a suitable deduction from the cash cost of replacing the building) to mean such depreciation as might take place after

the defendant insured the property, as before that time the defendant is not shown to have had any connection with the building, or interest in its preservation. This is in accordance with the general rule that, if there exists any ambiguity in a policy of insurance, it should be taken most strongly against the insurers (May, Ins., secs. 175, 176) ; and since the defendant did not avail itself of the offer made by the court to allow evidence to be introduced as to depreciation in value of the building after its insurance, it is fair to presume that none had taken place.

The plaintiff was allowed, against the objection of the defendant, to introduce evidence explanatory of his and the insurance agent's understanding, at the time the policy was taken out, as to what articles of property were to be insured under the head of "barroom fixtures." We do not think that there was anything in those words of such ambiguity as to admit of parol testimony to explain what was meant by the parties to the contract in making use of them. The term "fixture" has a well ascertained and certain meaning, as something affixed to realty; and the word "barroom" has a certain meaning, and there could be no doubt that "barroom fixtures" inserted in the policy could only be reasonably interpreted to mean fixtures in a barroom. Hence all the evidence which was admitted to prove the loss of property as being included in those words of the contract, which would not be held to be so included by the use of such words as ordinarily understood, and as we understand their meaning in such an instance as above stated, should have been ruled out by the court, and the plaintiff was not entitled to recover anything based on that evidence.

We perceive no further prejudicial error in the record, but for that heretofore indicated the judgment and order should be reversed.

We concur: Belcher, C. C.; Searls, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are reversed, and cause remanded for a new trial.