THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY v. MRS. ETTA KELLER.

No. 499.*    (62 Pac. 905.)

1. PLEADING—*Defective Petition—Averments Supplied by Answer.* When a petition is defective for want of a material averment, and such averment is supplied by the answer, and is not inconsistent with the averment and claim of the petition, the defects of the petition will thereby be cured.

2. NEGLIGENCE—*Questions for Jury—Approval by Trial Court.* Upon the facts stated in the opinion, it is *held*, that questions as to the negligence of the defendant and the contributory negligence of the plaintiff's intestate were for the jury, and that its verdict, which is based on conflicting evidence and is in accord with the law as declared in the instructions, must, after being approved by the trial court, be permitted to stand.

---

*Petition for order to certify denied by supreme court January 5, 1901.—REP.

Error from Wilson district court; L. STILLWELL,
judge.  Opinion filed November 15, 1900.  Affirmed.

*J. W. Gleed, D. E. Palmer,* and *John L. Hunt,* for
plaintiff in error.

*P. C. Young,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. : This action was brought by the de-
fendant in error in the district court of Wilson county
to recover damages for the death of her husband,
Charles Keller, which was alleged to have been caused
by the negligence of the employees of the receivers of
the St. Louis & San Francisco Railway Company.  A
trial was had to a jury, which returned a verdict for
the plaintiff in the sum of $1900, and judgment was
entered accordingly.  The deceased was killed by an
engine in the railroad yards at Neodesha, while he
was in the act of uncoupling a car which was being
pushed by the engine upon a side-track, and while
the train crew were making up a freight-train, pre-
paratory to its departure from that place.  The ac-
cident happened on September 11, 1895, while the
railroad was under the control of the receivers who
had been appointed by the United States circuit court
in the case of the *Mercantile Trust Company v. The St.
Louis & San Francisco Railway Company,* and the action
was brought after the property had passed to the plain-
tiff in error.  The amended petition alleged that on
June 30, 1896, the special master appointed in the
foreclosure action executed to Blair, Eastman, Gleed
and Henderson a deed for the railroad property ; that
on the same day the Mercantile Trust Company exe-
cuted a deed for the same property to the same par-

31—10 KAN. APP.

ties ; that the latter on the same day conveyed the said property to the defendant below ; and that thereupon the defendant assumed and became responsible for all liabilities *which existed against the old company,* the St. Louis & San Francisco Railway Company.

The petition further alleged the control and operation of the road by the receivers from a time prior to the month of September, 1895, until June 30, 1896, and that such receivers were discharged on the lastnamed date ; that while in control of the road the receivers used all the net proceeds arising from its operation in its betterment and enhancement in value ; that the road was thus enriched when it passed into the ownership of the defendant ; and that the receivers had in their hands no money or property belonging to the old company at the time the defendant took possession of the road. The petition did not allege that the new company assumed any of the obligations or liabilities of the receivers. It was further alleged that at the time of his death Keller was a brakeman in the employ of the receivers of the road ; that on the morning of the accident he was engaged with the others of his train crew in switching cars, and while endeavoring to uncouple a car from the engine at the street crossing he caught his foot between the edge of the crossing plank and a rail of the track, or tripped by stepping into a hole at the end of the crossing, and was struck by the brake-beam of the tender and was run over and injured, from which he died shortly after. The specific acts of negligence alleged are summarized in the petition, as follows :

"(*a*) Negligence on the part of their servants in laying the said plank so far from the rail of the track as to allow room to catch the foot or feet of the deceased. (*b*) Negligence in knowingly permitting the hole to remain under the end of the said plank. (*c*)

Railroad Co. v. Keller.

Negligence in not having beveled the ends of the said plank. (*d*) The foregoing acts, summarized, were performed by servants of the said receivers in no way connected with the grade or kind of work to which the deceased belonged or followed for the said receivers. (*e*) In putting a round and too large pin in an oblong pin hole, which caused the same to stick fast."

The foregoing were the only acts of negligence referred to in the instructions to the jury. The defendant demurred to the petition as not stating facts sufficient to constitute a cause of action, and the demurrer was overruled. Thereupon the defendant answered by a general denial and an averment that the plaintiff was guilty of contributory negligence. The answer also contained a plea to the jurisdiction of the court, the ground thereof being that the United States circuit court for the eastern judicial district of the state of Missouri had, and still retained, entire jurisdiction over the action brought by the Mercantile Trust Company of New York against the St. Louis & San Francisco Railway Company and over the receivers appointed therein; that such receivers had full power and authority to settle and adjust all claims against the railway company which accrued prior to and during the time said receivers managed and controlled said railroad; and that John J. McCook had been retained by the order of the court as the sole receiver of the railway company to wind up its affairs and the affairs of the receivers. The answer further averred that on April 30, 1896, that court, upon issue joined in said action, entered of record its judgment and decree; and that by the provisions of the decree the court still retained jurisdiction of the action and of all matters and things connected therewith, and jurisdiction and control over said McCook

as sole receiver of the railway company until all matters connected with the action and receivership should be determined and the receiver discharged. Copies of the order and the decree were attached to the answer as exhibits "A" and "B" respectively and made a part thereof. The order appointing the receivers contained a provision that all just and legal debts and liabilities due or owing by the defendant company,

"together with all just and legal debts and liabilities which the said receivers may incur in operating said road, including claims for injury to persons and property, shall constitute a lien on said railroad and its appurtenances paramount to the lien of the mortgage sought to be foreclosed by the bill in this case; and said railroad shall not be released from such liens until such debts and liabilities are paid."

It further provides:

"That the lien for the debts and liabilities, herein declared to be preferred, shall continue until the same are satisfied; and the sale of said road or its discharge from the custody of the receivers shall not affect said lien or deprive claimants of the opportunity of proving or collecting their demands, but said sale shall be made subject to such liens."

The decree annexed to the answer contained provisions in substantial accord with the foregoing.

One of the principal contentions of counsel for the plaintiff in error is that the court erred in overruling the demurrer to the petition, and that the error was not cured by reason of the averments in and exhibits annexed to the answer. Counsel are correct in their claim that the petition was demurrable for failure to state that the new company, the plaintiff in error, assumed the obligations and liabilities of the receivers, but they are not correct in the contention that this al-

Railroad Co. v. Keller.

legation was not sufficiently supplied by the answer. The rule is well stated by Judge Pomeroy, as follows:

"A defective complaint or petition may be supplemented, and substantial issues may thus be presented by the answer itself. When the plaintiff has failed to state material facts, so that no cause of action is set forth, but these very facts are supplied by the averments of the answer, the omission is immaterial, and the defect is cured." (Pomeroy, Code Rem., § 579.)

See, also, the cases cited in the note to the section, and particularly the following: *Sengfelder v. Insurance Co.*, 5 Wash. 121, 31 Pac. 428; *Bate v. Graham*, 11 N. Y. 237; *Duyton Insurance Co. v. Kelly*, 24 Ohio St. 345, 357; *Mining Co. v. Johnson*, 13 Colo. 258, 22 Pac. 459; *Cohn v. Husson*, 113 N. Y. 662, 21 N. E. 703; *Hegard v. Insurance Co.*, 72 Cal. 535, 11 Pac. 594; *Schenk v. Insurance Co.*, 71 Cal. 28, 11 Pac. 807. The view just stated is that which has been uniformly entertained by our supreme court. In *Irwin v. Paulett*, 1 Kan. 418, the following declaration from another court is cited with approval:

"When a petition is defective for want of a material averment, and such averment is supplied by the answer, and is not inconsistent with the averment and claim of the petition, the defects of the petition will thereby be cured."

In numerous later decisions this rule has been adhered to by the supreme court. See, particularly, *Sanford v. Weeks*, 39 Kan. 649, 18 Pac. 823.

It is further contended that the court erred in overruling the demurrer to the plaintiff's evidence. Counsel claim that the evidence demurred to tended to show that the plaintiff's intestate was guilty of negligence directly contributing to his death, in that he went upon the track between the tender of the engine and

the car while the same were in motion to effect the uncoupling, when the safe and proper place for him was outside of the rails; and they further claim that there was no evidence of negligence on the part of the receivers, their servants and agents, in respect to the construction or maintenance of the crossing at which the casualty occurred or in respect to the coupling apparatus. The first claim of counsel did not arise under the demurrer to the evidence, and the second we think untenable for certain reasons. An eye-witness who stood near when Keller stepped between the cars and when he fell testified that Keller seemed to be unable to lift the coupling-pin because it was wedged in tightly, and that he gave a signal which the fireman did not see, and about the same time caught his foot and fell. The witness stated that after Keller fell he was dragged from ten to fifteen feet on the rail, when his clothing was caught by the rail, and at that moment the wheels of the tender cut off both of his legs. The witness stated that Keller caught his foot under or near the west end of the crossing plank, and that his foot was not fast between the rail and the plank. He further testified that after the accident the pin was very tight in the draw-head, and could not be moved by the hands alone. The engineer testified that, as he remembered it, the deceased entered between the cars near the west end of the crossing, and that he was dragged for a distance of a few feet after he fell. He also stated that he went to Keller as soon as possible and asked him how it happened, to which Keller answered: "I hung my foot in the crossing; I hung my foot in the crossing board"; and that Keller, after a moment's pause, said: "I do n't know how it was done." There was also evidence indicating that the crossing planks were laid too far from the

Railroad Co. v. Keller.

rail. One witness for the plaintiff testified that the deceased was facing the car, and another testified that he was facing the tender. The pin hole in the draw-head was described by the witnesses as being oblong in shape, and the pin, which had been inserted shortly before the accident by another employee of the receivers, was a round pin. It appears from the testimony for the plaintiff that the deceased, after discovering that the pin could not be withdrawn, signaled those in charge of the engine to stop, and that almost immediately thereafter he fell. Whether or not he had time to see and comprehend that it would have been safer to have stepped outside of the rails to give the signal was, in our opinion, a question properly for the jury, and we think the facts just stated warranted the overruling of the demurrer to the evidence.

The testimony offered by the defendants tended to show that going between the rails and between moving cars to uncouple the same is not the safest practice, and that uncoupling under such circumstances can and should be done without going between the rails. The testimony did not show any positive rule in respect to work of this character, nor did it indicate any unvarying practice. It was for the jury to determine, under all the evidence, whether or not the deceased was guilty of contributory negligence. Whether or not the deceased was reasonably chargeable with knowledge of the condition of the crossing at the time he was killed was properly left by the court for determination by the jury. The findings that he had been in the habit of making up trains at and near the place where he was killed, for three years prior to the date of his death, and that he was in the habit of coupling and uncoupling cars at that point, do not in our view indicate that the jury disobeyed the court's instruc-

tions.   Upon nearly all material matters the evidence is somewhat conflicting, and repeated readings of the record have tended to strengthen the conviction that the verdict finds support in the proven facts and accords with the law as declared in the instructions. The judgment of the trial court has approved that verdict, and it will accordingly be affirmed.