[Civ. No. 2159. Third Appellate District.—May 24, 1920.]

## BESSIE McCORD, Administratrix, etc., et al., Respondents, v. J. D. MARTIN et al., Defendants; WILLIAM LINDEMANN, Appellant.

[1] PLEADING — CASE PRESENTED — RIGHT OF RECOVERY.—A plaintiff must recover, if at all, upon the case made by the pleadings, and not upon a case which may be developed by the proofs.

[2] ID.—ADMISSION OF EVIDENCE WITHOUT OBJECTION—WAIVER OF OBJECTION THAT NO ISSUE PRESENTED.—Where a cause is tried upon the theory that a certain fact is in issue and evidence thereon is received without objection, it is too late thereafter to complain that no such issue was presented.

[3] CORPORATIONS—SALE OF STOCK—DUTY OF SECRETARY TO DISCLOSE PRICE OFFERED—PARTICIPATION BY OTHER STOCKHOLDERS IN BONUS RECEIVED.—One who is a stockholder and the secretary of a corporation is under no legal obligation to disclose to the other stockholders that he has received an offer of a given amount per share for his stock in the corporation if such other stockholders will sell at a lesser amount per share to the extent that the purchaser may secure a given number of shares; and if such other stockholders, uninfluenced by the secretary, are willing and agree to and do sell at the lower price, they have no claim upon the additional price or bonus received by the secretary.

[4] ID.—POOLING OF STOCK—JOINT ADVENTURE NOT CREATED.—A joint adventure does not exist where property is pooled by the several owners to be sold at a particular price, and each contributor is to receive the proceeds of the property contributed by him.

[5] JUDGMENT OF DISMISSAL — STIPULATION FOR — RES ADJUDICATA.—Where the parties to an action, through their respective counsel, stipulate in open court for the dismissal of the action and the payment of their respective costs, and judgment of dismissal is thereupon entered, that judgment constitutes a bar to another suit afterward brought upon the same cause of action.

[6] ID.—RECITALS IN — WHEN CONCLUSIVE.—The recitals in a judgment of dismissal showing that the parties to the action, through their respective counsel, stipulated to the dismissal of the action and the payment of their respective costs, in the absence of evidence to the contrary, are conclusive upon the parties.

[7] ID.—ENTRY UPON STIPULATION—JUDGMENT ON MERITS.—Where the parties appear in open court and stipulate for a dismissal the situation is not covered by section 581 of the Code of Civil Procedure, but a judgment entered thereon is a judgment on the merits as contemplated by section 582 of said code.

APPEAL from a judgment of the Superior Court of Kings County. M. L. Short, Judge. Reversed.

The facts are stated in the opinion of the court.

Lamberson & Lamberson for Appellant.

W. B. Wallace, *in pro. per.,* and Bradley & Bradley for Respondents.

BURNETT, J.—The action was begun in the superior court of the county of Santa Clara on the 22d of December, 1913. On the eighth day of October, 1914, an amendment to the complaint was filed to which the defendant, William Lindemann, filed a demurrer. The demurrer was sustained without leave to amend on the twenty-eighth day of December, 1914, and thereafter, on the eighteenth day of January, 1915, judgment was entered in favor of defendant, Lindemann. An appeal from such judgment was thereafter taken by the plaintiffs, and the judgment was reversed by the district court of appeal of the first district. (*McCord v. Martin,* 34 Cal. App. 129, [166 Pac. 1014].) The *remittitur* was filed in the court below on the sixth day of August, 1917, and thereafter an order was made by said superior court that the defendant answer within ten days after notice of said order. Within time the answer was filed, and thereafter, on motion of plaintiffs the action was transferred for trial to the superior court of Kings County. On January 15, 1918, the plaintiffs gave notice of a motion to strike out portions of the answer of defendant Lindemann, including paragraph 16 thereof, which set up as *res judicata* a judgment of dismissal in an action between the same parties entered by the superior court of the city and county of San Francisco on the sixteenth day of May, 1913, as follows:

"It appearing to the court from the stipulation filed herein on the 12th day of May, 1913, signed by the attorneys of record of all of the respective parties in interest, that plaintiffs (naming them), through their attorneys, Messrs. Bradley & Bradley and F. H. Gould, and that defendant and cross-complainant J. D. Martin, through his attorneys, Messrs. Morrison, Dunne & Brobeck, and that

defendant William Lindemann, through his attorney Alfred Daggett, and that cross-defendants (naming them), through their attorneys, Messrs. Bradley & Bradley and F. H. Gould, have, and each of them has, stipulated that the above-entitled action and every part thereof shall be dismissed as against each and all of the parties to the above-entitled action, and that all of said parties have further stipulated that each and all of the parties to said action shall pay their costs of suit incurred by them respectively; and each and all of the above-named parties, through their said respective attorneys having stipulated in open court on the 12th day of May, 1913, that said action and every part thereof shall be dismissed pursuant to the terms of the aforesaid stipulation on file herein, and good cause appearing therefor.

"Now therefore, it is ordered that the above-entitled action and every part thereof be, and the same is hereby dismissed as to all the parties to said action.

"It is further ordered that each and all of the above named plaintiffs and each of said defendants and said cross-complainant and each and all of said cross-defendants pay his or their own costs incurred by him or them respectively in said action.

"It is further ordered that this judgment of dismissal be duly entered by the Clerk."

Paragraph 17 of said answer, to the effect that said judgment has never been reversed, modified, or appealed from, and has become final, and that the cause of action therein was the same as the action admitted to be set up by the complaint herein, was also stricken out.

The plaintiff, J. W. McCord, having died, his administratrix was substituted by order of said court. The cause was tried without a jury, and on the first day of March, 1919, the court filed its findings of fact and conclusions of law, and judgment was entered thereon in favor of plaintiffs as against William Lindemann on the eleventh day of March, 1919. Two days later the defendant Lindemann gave notice of a motion to enter a different judgment, which motion was denied on the twenty-fourth day of March, 1919. The proceedings upon this motion have been preserved in a bill of exceptions. Defendant Lindemann has appealed from said judgment and said order denying his said motion.

The first point made by appellant worthy of serious consideration is stated as follows: "The findings of fact are not responsive to the issues made by the complaint and answer and are outside the pleadings, and if the findings justify any judgment at all against appellant, it is for a cause of action wholly different from that stated in the complaint." The theory of the complaint is that defendant Martin knew that one George T. Cameron of San Francisco desired to purchase at least twenty thousand shares of the stock of the Lost Hills Mining Company belonging to the assignors of plaintiffs and was willing to pay therefor "a large sum of money in excess of five dollars per share"; that thereafter said Martin devised a scheme to induce said stockholders to pool their stock to sell in one block to an undisclosed purchaser for five dollars per share; that to enable Martin to carry out said scheme he sought the aid of Lindemann and paid the latter a large sum of money for his assistance; that thereafter defendants represented to said joint stockholders that they knew a man, whose name they did not disclose, who would buy all of the stock of said Lost Hills Mining Company, but not less than twenty thousand shares, for five dollars per share and no more; that it was worth no more than five dollars per share, and could not be sold for more; "that it would be necessary to pool said stock and place it in escrow in a bank to the amount of at least twenty thousand shares, in order to induce said proposed purchaser to come to Hanford and buy the same; that defendants and said E. L. Lindemann would join with said joint stockholders in pooling their said shares and placing them in escrow to be sold in one lot at the price of five dollars per share"; that said representations were false, but were believed and relied upon by said joint stockholders, and they did thereupon so pool their stock and placed it in escrow with the First National Bank of Hanford to be delivered in one block to a purchaser to be produced by defendant Martin, upon the payment of five dollars per share therefor.

"That thereafter said proposed purchaser, who was said Cameron, upon being notified by defendants that said stock had been placed in escrow as alleged, went to Hanford and in accordance with a secret agreement with defendants brought all the said stock so placed in escrow, for eight

dollars per share, of which he placed five dollars per share in said bank for all thereof, and paid the balance of the aggregate value thereof at eight dollars per share to defendants. That the value of said stock as so pooled to be sold in one block was at the time it was so pooled and sold, eight dollars per share.''

Being stated concisely, then, the only cause of action appearing in the complaint rested upon these facts: Both defendants Martin and Lindemann falsely represented to other stockholders that if they would pool their shares of stock they could sell to a certain purchaser for five dollars per share, said stockholders believed and acted upon said representations; whereas, said Martin and Lindemann knew that the stock could be sold for eight dollars per share and had an agreement to that effect, and did actually consummate the sale for that price, but the other stockholders in accordance with the terms of said pooling arrangement received only the sum of five dollars per share, said Martin and Lindemann appropriating to their own use the balance of some ninety-one thousand dollars. If these facts had been shown and found it could hardly be seriously argued that plaintiffs were not entitled to a judgment against defendants. The proper legal characterization of the transaction might be in some doubt, but at any rate the principles of equity as formulated in the code and administered by the courts are ample to reach and defeat such iniquitous conduct. But the trouble is, the trial court found that Cameron agreed with Martin ''to purchase not less than twenty thousand shares for a price not exceeding five dollars per share; that Martin then communicated to a few of plaintiff's assignors the information, and they in turn conveyed it to the other stockholders; that defendants did not devise any scheme for effecting a sale of the interest of said Martin & Dudley in said mining claims and said Lake Shore Oil Company stock and the stock of Lost Hills Mining Company to Cameron, and Lindemann at no time knew of the plans or expectations of the firm of Martin & Dudley to sell the interest of said Martin & Dudley in said claims to Cameron.'' It is further found in reference to a certain sum of money that was paid by Martin to Lindemann that it ''was paid to Lindemann not in pursuance of the scheme alleged in paragraph VII of the complaint, but was paid to Linde-

mann in order to remove Lindemann's opposition to the sale by him of his stock and that of his wife in the Lost Hills Mining Company, and that said Lindemann might not oppose the sale by plaintiff's assignors of their stock owned by them respectively in said Lost Hills Mining Company. . . . Lindemann did not have any agreement with defendant Martin or with the firm of Martin & Dudley for a share nor did Lindemann receive from defendant Martin or from the firm of Martin & Dudley any share in any profits which were made by defendant Martin or by the firm of Martin & Dudley in the sale to Cameron . . . nor did Lindemann agree with defendant Martin to aid and abet, or aid or abet nor did he in fact aid and abet or aid or abet defendant Martin in carrying into effect the scheme alleged in paragraph VII of the complaint,'' said scheme contemplating, as we have seen, the fraudulent claim and sale of the stock for five dollars per share. It is thus apparent that the findings negative every material allegation of the complaint upon which a judgment against Lindemann could possibly be justified. In fact, he is expressly acquitted of any improper or reprehensible conduct within the scope and intent of the attempted cause of action. The judgment would necessarily, therefore, have been in favor of Lindemann (as it was actually in favor of Martin), had not the trial court gone outside the pleadings and determined certain facts to which the issues were not addressed. Appellant states the gist of these findings substantially as follows: About a week prior to March 20, 1911 (the latter date being the time when the so-called escrow agreement was signed), appellant received a letter from the Mercantile Trust Company of San Francisco representing that if a certain client whom they represented purchased at least a majority of the stock of the Lost Hills Mining Company at the price of five dollars per share, their client would pay Mr. Lindemann fifteen dollars per share for his stock. On March 20th following the said escrow agreement was signed and delivered authorizing said First National Bank of Hanford to deliver the stock to the purchaser for five dollars per share. Up to this time appellant did not know who the purchaser was or whether said offer was genuine. After said escrow agreement was made appellant ascertained who was the prospective purchaser. Subsequently on March 30th Mr.

Cameron came to Hanford and bought at five dollars per share the stock of several of plaintiffs' assignors who had signed the escrow agreement; also appellant's stock at fifteen dollars per share; and also the stock at five dollars per share of several others of plaintiffs' assignors, who brought their stock to the bank. Lindemann was secretary of the company, and the court's reason for imposing upon him this liability is disclosed in the finding that he "owed a duty to the other stockholders of said corporation to inform them as to the reception of said letter, and of his interview with the said Cameron, and of his reception of fifteen dollars per share for said stock, and that it was fraudulent on his part to sign the said escrow agreement, whereby he had promised to sell his stock for five dollars per share, when, in fact, he had received said letter, and expected to receive fifteen dollars per share for said stock, and it was fraudulent on his part to conceal the fact that he had received said letter."

It is quite apparent that thus is presented an entirely different story from that set forth in the complaint. It is sufficient to say that the so-called fraud herein does not at all involve any fraudulent representation to induce the other stockholders to pool their stock nor the actual sale of said stock for a price in excess of five dollars per share—the two essential elements that characterized the cause of action as set forth. [1] But it is well settled by a long line of decisions in this state that "the plaintiff must recover, if at all, upon the case made by the pleadings, and not upon a case which may be developed by the proofs." (*Kredo* v. *Phelps*, 145 Cal. 526, [78 Pac. 1044].)

[2] This principle would be fatal to the judgment were it not for the well-recognized rule of practice that, where a cause is tried upon the theory that a certain fact is in issue and evidence thereon is received without objection, it is too late thereafter to complain that no such issue was presented. (*Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 318, [147 Pac. 90]; *Howard* v. *Hobson Co.*, 38 Cal. App. 445, [176 Pac. 715].)

In the absence of the evidence at the trial and in view of said finding of the court, the presumption being in favor of the regularity of the proceedings, we must assume that such was the action of the parties.

[3] The question then occurs whether sufficient facts are found to justify a judgment against appellant for fraud? In relation thereto the first thing that challenges attention is that the other stockholders in their agreement to sell their stock were not influenced by any representations of appellant. He did not deceive them in any way and he made no effort to persuade or induce them to pool their stock for the purpose of sale at the price of five dollars per share. The proposition was presented to them by Martin, who was interested in the transaction primarily for the reason that he hoped to sell to said vendee other interests closely connected with the property of the Lost Hills Mining Company. The court finds specifically that Lindemann did not know of the plans or expectations of Martin and did not aid or abet any scheme that the latter may have had in view. (The situation then is simply this: L. is offered fifteen dollars per share for his stock in a certain corporation if other stockholders will sell at five dollars to the extent that the purchaser may secure twenty thousand shares. The other stockholders uninfluenced by L. are willing and agree to sell at the lower price. The question is, whether they have any claim upon the additional price or *bonus* thereafter received by L. The answer to this question depends, of course, upon the consideration whether L. sustained to the others any relation of confidence which made it his duty to disclose his prospect of a larger price.) Since any active or positive fraud is negatived by the findings of the court, there remains only the possible operation of the principle of fraudulent deceit consisting of "the suppression of a fact, by one who is bound to disclose it." (Sec. 1710, subd. 3, Civ. Code.) But we have not been cited to any authority to the effect that, either as stockholder or secretary, Lindemann was under any legal obligation to disclose to the others the fact that he had received such letter from the Mercantile Trust Company, or that he afterward obtained fifteen dollars per share for his stock. It may be admitted that some men of a fine sense of honor would have done such a gracious and altruistic act, but we are simply to inquire what the law demands in a situation of this kind.

In *Ryder* v. *Bamberger,* 172 Cal. 791, [158 Pac. 753], it was held that even "directors and officers of a corporation have the right to purchase the shares of the stock of other

stockholders, where the transaction is free from fraud; and they are not bound to acquaint a stockholder willing to sell his stock with facts which would enhance the price of the stock, as they are only trustees for the stockholders as to the management of the corporation and not in their private dealings.'' Manifestly, there is less reason for holding that the secretary, who is a mere ministerial officer of the corporation, holds such relation of trust and confidence to the other stockholders as to require a disclosure of any information that he may have received in his individual capacity as stockholder.

*Hallidie* v. *First Federal Trust Co.,* 177 Cal. 600, [171 Pac. 431], involved an action ''to compel an accounting of dividends and other proceeds realized by the purchaser, on the ground that the sale had been induced by fraudulent misrepresentations made by Enginger to Hallidie, who was acting in the transaction for California Wire Works.'' It was contended by appellant that, even if there was no active misrepresentation by Enginger, he was chargeable with constructive fraud because of his failure to disclose all the facts within his knowledge. The supreme court, however, said: ''But the evidence did not show any such relation between the parties as to impose upon Enginger the stringent obligations of a trustee. While Enginger was a director and general manager of the Wire Cloth Company, it must be remembered that Hallidie himself was not only a director, but the president of the corporation. In negotiating for the stock, the two stood on equal terms, and neither owed the other any special duty of a fiduciary nature. This being the relation between the parties, the fact, if it be a fact, that the stock was, at the time of the purchase, worth very much more than the price paid, does not furnish a ground for setting the transaction aside.''

Other cases cited announcing a similar doctrine are *Bacon* v. *Soule,* 19 Cal. App. 428, [126 Pac. 384]; *Hooker* v. *Midland Steel Co.,* 215 Ill. 444, [106 Am. St. Rep. 170, 74 N. E. 445]; *Tippecanoe County Commrs.* v. *Reynolds,* 44 Ind. 509, [15 Am. Rep. 245]; *Walsh* v. *Goulden,* 130 Mich. 531, [90 N. W. 406].

[4] Nor do we think that appellant is liable upon the theory that all signing the escrow agreement were joint adventurers. In 23 Cyc. 453, it is said: ''A joint adventure does

not exist where property is pooled by the several· owners to be sold at a particular price, and each contributor is to receive the proceeds of the property contributed by him.''

The stockholders at all times owned their respective shares of stock severally and individually and at no time was there a joint interest either in the stock or the proceeds thereof.

The cases cited by respondents in view of their respective facts do not,· in our judgment, satisfactorily meet the situation. Detailed consideration of only one of these, *Cole* v. *Bacon*, 63 Cal. 571, is invited by respondents as they seem to think it is ''very similar to the case at bar''; but appellant aptly calls attention to the fact that therein Bacon was the avowed agent of the plaintiffs, who were stockholders in a certain corporation, and as such agent he undertook to sell the stock of plaintiffs for the highest price obtainable. He did sell said stock for two hundred and fifty thousand dollars, of which he secretly retained all except forty-seven thousand seven hundred dollars, and he falsely. represented to plaintiffs that this sum was the price actually paid. The action was brought to recover the balance and a judgment in favor of plaintiffs was sustained by the supreme court. That an agent could thus defraud his principal without rendering himself legally liable to an accounting would, of course, not be urged by anyone familiar with the law. It may be added that the case here as presented by the complaint is ''very similar'' to *Cole* v. *Bacon, supra,* but the case as presented by the findings is quite dissimilar.

[5] We think, also, that the court erred in striking out the defense of *res judicata*. It is stated by appellant that at the trial the facts were stipulated to be as alleged in said defense.

In *Merritt* v. *Campbell*, 47 Cal. 542, it was held that ''a judgment of dismissal, rendered upon the oral agreement of the parties in open court with a stipulation that each party pay his own costs, is a bar to another suit afterward brought upon the same cause of action.'' Such dismissal was declared to be equivalent to *retraxit* as known at common law, which, being ''an open and voluntary renunciation of his suit in court,'' the plaintiff was not at liberty to renew. Respondents, however, claim that said decision is not controlling because therein ''the parties appeared in court by their attorneys and orally agreed to a dismissal, each party

to pay his own costs." Appellant rejoins: "Respondents evidently overlook the fact that in the case at bar the parties did stipulate in open court for the dismissal of the action and the payment of their respective costs, the same as was done in *Merritt* v. *Campbell*." **[6]** The terms of said judgment do, indeed, accord with appellant's statement, and, of course, the recitals in said judgment in the absence of evidence to the contrary are conclusive upon the parties. (*Crew* v. *Pratt*, 119 Cal. 139, [51 Pac. 38].)

As to *Rincon etc. Co.* v. *Anaheim Union Water Co.*, 115 Fed. 543, cited by respondents, appellant is justified in his comment that, first, the interpretation by a federal court of a state statute is not binding upon the state courts (*People* v. *Linda Vista Irr. Dist.*, 128 Cal. 477, [61 Pac. 86]), and second, that the dismissal therein was not made in open court by stipulation of the attorneys of both parties, but only on motion of defendant's counsel, and the court based its ruling upon subdivision 2 of section 581, and not upon section 582, of the Code of Civil Procedure, as was done in the Merritt case.

**[7]** Where the parties appear in open court and stipulate for a dismissal the situation is not covered by said section 581, but a judgment entered thereon is a judgment on the merits as contemplated by said section 582.

Some other questions are discussed by counsel but we deem it unnecessary to notice them specifically. As we view the matter, the findings do not support a judgment for plaintiffs but require a conclusion in favor of defendant Lindemann. When such is the case, the proper proceeding is to direct judgment for the defendant. (*Dargie* v. *Patterson*, 176 Cal. 714, [169 Pac. 360]; Code Civ. Proc., sec. 53.)

The judgment is reversed, with direction to enter judgment upon the findings for defendant Lindemann for his costs.

Nicol, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 23, 1920, a majority of the Justices not having assented to the granting thereof, and Lawlor, J., and Olney, J., voting for the granting of said petition.