[No. 19083. Department Two. September 15, 1925.]

M. N. HUDNALL et al., Respondents, v. PENNINGTON & COMPANY et al., Appellants, W. A. LINN et al., Respondents.[1]

SALES (4)— CONTRACT — DISTINGUISHED FROM CONSIGNMENT FOR SALE. There is a sale, as distinguished from a consignment for sale, where a marketing association contract provided that all crops shall be sold at prices f. o. b. Kennewick and no goods will be consigned except with consent of the committee, no consent having been given.

SALES (73)—PERFORMANCE OF CONTRACT—QUALITY OR FITNESS. A company buying the products of a marketing association cannot complain that a crop was not up to grade, where the buyer had contracted to perform all necessary field work, provide inspection, and do all things necessary to prepare the crop for market.

JOINT ADVENTURES (1)—CONTRACTS—POOLING AGREEMENT FOR SALE OF CROPS. A marketing association, pooling crop sales under a sales contract made by a committee, is not a joint venture in the sense that each member would be responsible for everything done by the association.

INTEREST (7)—ALLOWANCE—DEMANDS NOT LIQUIDATED. Interest is properly allowed to members of a marketing association on balances due at the close of the season, where demand was made and refused, and, had the buyer properly kept the accounts and rendered statements as required, the balance due could have been readily ascertained.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered May 7, 1924, upon findings favorable to the plaintiffs, in an action on contract, tried to the court. Affirmed.

*George F. McAulay* and *Phil G. Warnock,* for appellants.

*Moulton & Jeffrey* (*H. C. McBean,* of counsel), for respondents.

[1]Reported in 239 Pac. 2.

MITCHELL, J.—In the spring of 1921, a large number of farmers in the vicinity of Kennewick and Richland, engaged in growing strawberries, asparagus and early potatoes, entered into articles of agreement for the purpose of marketing their products. By the terms of the articles, a committee of five was appointed to represent the association. Pursuant to the powers conferred, the committee entered into a contract with Pennington & Company, a corporation (hereinafter called the company), as sales agent for the products. The contract provided that the company should furnish a surety bond conditioned that the company would collect and account for the proceeds of all crops sold by it, and would otherwise faithfully perform the contract. The bond was furnished with the Royal Indemnity Company, a corporation, as surety. The growers delivered their products to the company, by whom they were sold. The company neglected and refused to make final settlement with certain of the growers, and this suit was brought by the association committee to recover the amounts due.

In the course of settling the pleadings, an order of court was entered requiring all members of the association to be brought in as parties to the action. A large number of them appeared in the action by complaint against the company and its surety. Upon the pleadings being settled, the case was tried without a jury. Certain findings and conclusions were entered in favor of the plaintiffs and against the company and its surety. Other findings and conclusions were entered in favor of the company against certain members of the association, because of the fact that by errors made by the company they had been overpaid. Judgment was entered upon the findings. The company and the surety have appealed from that portion of the judgment against them.

The questions involved in the appeal have to do principally with a carload of strawberries shipped to a party in Spokane by the company, and several carloads of potatoes, a part of which were shipped by the company to a party in Seattle and the other part to a party in Chicago. All of such products were delivered by the growers to the company at Kennewick. It was and is the contention of the appellants that the company did not make sales of the products in controversy, but only forwarded them to its brokers to be sold; and further, that the potatoes were inferior in grade, causing loss that the company is not responsible for.

There was a conflict in the testimony as to whether the dispositions made by the company of the products were, or were intended by the company to be, sales or consignments. Out of the conflict the trial court decided, upon what appears to be a preponderance of the evidence, that each transaction was a sale by the company. And, over and above this finding and in complete harmony with it, the company's contract provided: "All sales of crops delivered by the growers under this contract will be sold at prices f. o. b. Kennewick and no goods will be consigned except with consent of the committee." There is no claim that the committee ever gave consent to anything other than a sale.

As to the other contention, that the potatoes were not up to grade, if it be true, the company has itself only to blame, since its contract with the association provided:

"The company will perform all necessary field work, will provide all inspection, and will do all other things necessary and proper to see that the crops herein described are properly crated and packed and prepared for market, etc."

Another contention of the appellants is that the company was damaged in a large amount because the total amount of products delivered by the association was greatly less than promised as an inducement in making the contract. But the trial court found, and we think correctly, that no such promise or representation was made.

It is further contended on behalf of the appellants that the amounts due by the several individual members of the organization to the company, for which it was given several judgments against them, should have been credited on the judgment in favor of the plaintiffs representing other members of the association. The argument is that each and all of the members are responsible to the company for everything done by it on account of its dealings with each member of the association in the handling of the products, whether resulting from its irregular and incomplete system of bookkeeping or otherwise. While the marketing plan adopted by the parties provided that the growers should join in the advantageous plan of carload lots for the purpose of shipment and sale, it was not a joint venture in the sense contended for by the appellant. By its contract the company obligated itself to "furnish each grower with a complete itemized statement of his account, etc." "A joint adventure does not exist where property is pooled by the several owners to be sold at a particular price, and each contributor is to receive the proceeds of the property contributed by him." *McCord v. Martin,* 47 Cal. App. 717, 191 Pac. 89, quoting 23 Cyc. 453.

Another assignment consists of the complaint of the appellants that the growers, or some of them, failed to deliver their potatoes to the company. The trial

court found against the contention, upon a clear preponderance of the evidence.

After the close of the season and disposal of the products, demand was made upon the company for settlement of the accounts. It failed and refused to comply. One of the assignments of error is that interest on the recovery against the appellants was not allowable from that date, or at any time prior to the date of the judgment. Under the contract, the company was required to render statements and make payments to the different growers as their products were sold, and finally, at the close of the season, deducting from the sale prices certain expenses and advances. Had the company kept its accounts properly and respected rather than denied its obligations, the balances due would have been readily ascertainable and should have been paid. Interest was properly allowable under the rule in *Modern Irrigation & Land Co. v. Neely,* 81 Wash. 38, 142 Pac. 458; *Sweeney v. Lewis Construction Co.,* 74 Wash. 303, 133 Pac. 441; *Parks v. Elmore,* 59 Wash. 584, 110 Pac. 381.

Affirmed.

TOLMAN, C. J., MACKINTOSH, HOLCOMB, and FULLERTON, JJ., concur.