[Civ. No. 26097. Second Dist., Div. Two. Sept. 7, 1962.]

HARVEY HAYUTIN, Plaintiff and Appellant, v. SEYMOUR WEINTRAUB, Defendant and Respondent.

Swerdlow, Glikbarg & Nicholas, Harry B. Swerdlow and Allan Albala for Plaintiff and Appellant.

Goodman & Cogen and Benjamin J. Goodman for Defendant and Respondent.

ASHBURN, J.—Plaintiff Harvey Hayutin appeals from an adverse judgment rendered in favor of defendant and cross-complainant Seymour Weintraub in an action brought for equitable cancellation of an agreement under which the parties had participated in a private auction of their shares of stock in an equally owned corporation named Banner Productions, Inc., Weintraub being the successful bidder; plaintiff also sought a judgment directing reopening of the auction and resumption of the bidding. The court awarded to defendant specific performance upon his cross-complaint.

Appellant's principal contentions on appeal are that the court erred prejudicially (1) in refusing him leave to file an amended complaint on the day of trial, and (2) in denying his motion for a new trial.

Banner Productions, Inc., was engaged in the business of producing Tarzan feature motion pictures for distribution to theatres; it also owned old feature motion pictures and some such pictures produced specially for television, and generally sought other production opportunities. Banner Films, Inc., its wholly owned subsidiary, was engaged in distributing old feature motion pictures of Banner Productions, Inc., for exhibition on television and in distributing television motion pictures for Banner Productions, Inc. Plaintiff and defendant each owned 50 per cent of the capital stock of the last-named company. Plaintiff was vice president and defendant was president. Plaintiff was in complete charge of the business with headquarters in Los Angeles, and for about two years preceding the auction agreement defendant spent most of his time outside of California, principally in Africa and England supervising the filming of a Tarzan picture; he returned in May 1960. Plaintiff had a brother named Marvin Hayutin, whose activities in the company and with respect to its moneys were particularly obnoxious to defendant. The court found that ''about the latter part of May, 1960, disputes, contro-

versies and differences arose between plaintiff and defendant; that subsquently, and on July 6, 1960, plaintiff and defendant entered into a written agreement under the terms of which the parties agreed to an auction whereby they would bid for each other's stock in Banner Productions, Inc., and the highest bidder would acquire from the other all of his shares of stock in Banner Productions, Inc." Said agreement was orally modified at the time of the auction in particulars not here pertinent.

The action is one for rescission for fraud. Appellant's principal claim of fraud is concealment and it stems from conversations resulting in an arrangement that the auction be held on July 15, 1960, so that plaintiff's brother Marvin could go to New York and talk with Mr. McGregor, president of Banner Films, Inc., in order to acquire information about the assets and prospective assets of that company. It is claimed by appellant that both parties were "required to submit a list of any activities in which we had spent any time or knew about; that would be activities for either Banner Films or Banner Productions." The opening brief says that "the parties agreed to deliver letters to each other and to Leon Kaplan, Esq.,[1] setting forth all assets, activities, potential deals and negotiations of Banner Productions and Banner Films not reflected in the books and records of the corporation, so as to enable the parties to better evaluate the worth of the company." But defendant testified: "This letter was one that I gave to Leon Kaplan and one that Mr. Hayutin was to give to Leon Kaplan, which each of us would read to explain which deals we were working on for the company at that time, which deals had been submitted to us individually." The letters were furnished and are in the record. The one furnished by plaintiff says: "Per my understanding with Mr. Weintraub, listed below are the projects that have not been consummated that I have worked on for the company"; that of Weintraub: "The following are proposals submitted to the company which I have discussed on behalf of the company with the persons indicated . . . . No commitments have been made on behalf of the company on any of the foregoing. I believe that either through conversation, correspondence, agreement or contract, all liabilities or obligations of the company of which I have knowledge are also

---

[1]The company's attorney, who was to act as auctioneer and escrow holder.

known to Harvey Hayutin.'' The practical construction thus placed upon the oral understanding falls short of plaintiff's claim as to its purport for the letters square with defendant's testimony and reflect only an agreement to furnish information as to deals or prospective deals in which the respective parties had participated.

The auction proceeded on July 15, 1960; the bidding started at $37,500 and worked up to a $225,000 bid made by defendant, whereupon plaintiff stated that the bidding was over and defendant was declared to be the buyer. Plaintiff then delivered his stock certificates duly endorsed to attorney Leon Kaplan to be held by him in escrow pending full consummation of the sale pursuant to the terms of the agreement. Defendant immediately gave to Kaplan his check for $56,250, 25 per cent of the bid, as required by the agreement.[2] Thereafter, on July 19th and within the time prescribed in the agreement, defendant delivered to Kaplan a certified check for the balance of the purchase price, $168,750. But plaintiff and his brother had on Sunday July 16 searched the office files thoroughly for some evidence upon which to base a rescission. Then plaintiff on July 17th had served a notice of rescission of the auction agreement and ''the so called auction,'' assigning among others the ground of fraudulent concealment by defendant. In effect plaintiff admitted on the witness stand that at the time he prepared, signed and delivered the notice of rescission he had no facts other than suspicion.[3] Defendant promptly rejected this attempted rescission.

On August 26, 1960, plaintiff's present action for rescission was filed through Messrs. O'Melveny & Myers, his then attorneys. The cause of action as alleged in the original complaint was fraud perpetrated through nine specified misrepresentations and concealments on the part of defendant. The prayer sought to have the contract declared null and void, also that the parties be ordered to resume the auction at the point

---

[2]Pursuant to stipulation Kaplan has continued to hold the stock and moneys pending the outcome of this action.

[3]''Q. At that time you had absolutely no information or facts under suspicion that there was anything improper about anything that Mr. Weintraub had done. A. I felt that everything Mr. Weintraub had done in his statements of values to me as to the business was wrong. Q. Did you know that at that time? A. That it was colored. Q. Did you know that at that time on that Sunday? A. I knew that I had relied on Mr. Weintraub for value, and I knew that I had placed my reliance in error. Q. I mean, at that time all you had was suspicion, wasn't that —— A. I knew he was a crook.''

where defendant had made his bid of $225,000, that plaintiff be allowed to make a higher bid and that the auction thereafter continue pursuant to the terms of the contract until the party making the next to last bid should fail or refuse to make any further bid. The cause was fully at issue by August 26, 1960.

Pretrial conference was held on May 4, 1961. It was there admitted that plaintiff had tendered and offered to restore everything of value that he had received. The pretrial order says: "No law or motion matters are pending. All discovery proceedings have been completed and no further depositions or discovery shall be had. The case is ready for trial before the court sitting without a jury"; also that the trial date of June 7, 1961, "shall remain in full force and effect." A joint pretrial statement which was incorporated by reference into the order says: "This is an action for rescission, based upon alleged misrepresentations and concealments, of a private auction held between plaintiff and defendant for the sale of corporate stock. . . . By this action, *plaintiff seeks to reopen the bidding* at the auction. *Neither plaintiff nor defendant seeks to set aside the Auction Agreement. . . .* There are no further pleadings to be filed. Discovery matters have been completed." (Emphasis aded.) An affidavit of Herbert A. Bernhard, one of plantiff's attorneys, made on June 1, 1961, and submitted in support of a motion for continuance (later discussed herein) says that he told the judge at the pretrial conference "that amendments to the complaint were likely in the event that a settlement was not consummated." A counteraffidavit of defendant's attorney Benjamin J. Goodman says: "Mr. Bernhard, in his affidavit, states that he objected to the Pre-Trial Judge adding to the statement that 'no law or motion matters were likely.' Mr. Bernhard made such a statement, but I immediately stated to the Court that I would object to any amended or supplementary pleadings unless they were applied for and filed prior to the Pre-Trial Order, with which statement the Court agreed." The discovery mentioned in the pretrial order included eight depositions comprising nearly a thousand pages, plus numerous exhibits, documents and other written memoranda. No effort to amend the pretrial order was made at any time.

The trial had been set for June 7, 1961. On May 29, 1961, nine days before the trial was to begin, plaintiff substituted Sidney Fischgrund as his attorney in the place of the law

firm of O'Melveny & Myers, who had been his attorneys from the outset. On May 31, plaintiff's new counsel noticed a motion for continuance for June 2 which was placed off calendar because of inadequate notice. On June 2, a new motion for continuance was noticed for hearing on June 7, the day of trial. The motion was granted and the case continued to June 19. However, the court imposed the following conditions: ''The matter may go to trial upon the present pre-trial order and upon the present pleadings without prejudice upon the plaintiff's right to urge his position for a jury trial and without prejudice to such application as may be made to the trial judge in the course of the trial with respect to amendments. MR. FISCHGRUND: Fine. That is perfectly all right, your Honor. THE COURT: And on condition that no application be made for an amendment to the pleadings prior to the trial. The motion for a continuance is granted to the extent that the trial of the matter is continued to June 19, 1961, in Department One, upon condition that the plaintiff and cross-defendant pay the expenses—transportation and other expenses—relative to the witnesses Jess Carillo and Gordon MacGlendon; and upon the further condition that plaintiff make no application between now and the date of trial with respect to amending or supplementing the existing pleadings; that the matter go to trial on that date upon the present pre-trial conference order the present pleadings, without prejudice to plaintiff's right to press his request for a jury trial and without prejudice to plaintiff's right to seek at the time of trial such amendments as he may attempt to secure.'' On June 19, plaintiff's counsel again moved for a continuance. His motion was denied and the case continued to the following day because of a congested calendar.

On the morning of June 20, plaintiff's counsel served a copy of the proposed amended complaint on counsel for defendant and at the commencement of the trial sought leave to file the amended complaint. It contained eight specifications of fraud which completely differed from the nine specifications in the original complaint. The original nine were omitted. The court said: ''I think that is a sound proposition of law that the Court should indulge in great liberality to have the pleadings fit the litigation and to allow the parties to amend from time to time as the litigation progresses so that the ends of justice will be served. I don't think there is any question about that. But as I see this situation, you have come in here with a brand new lawsuit, in effect.'' Then

it denied leave to file the amended complaint and the cause proceeded to trial.

On this appeal, plaintiff relies upon and argues one concealment which was first alleged in the proposed amended complaint, and in his briefs he contends that defendant knew of negotiations pending on behalf of Banner Films, Inc., the subsidiary of Banner Productions, for the acquisition of the Debbie Drake television show; that defendant considered it to be a valuable property; that although the parties had agreed to inform each other by letter of all pending negotiations within their knowledge, prior to the auction, defendant failed to mention to plaintiff anything concerning the Debbie Drake show. At the time of its ruling, the trial court had before it, in addition to the procedural facts stated above, the following: 1. The proposed amended complaint alleging, among other things, that defendant told plaintiff between May 20 and July 15, 1960, that Banner had no prospects for any new products for distribution to television; that ''defendant concealed from plaintiff'' that '''Banner had prospects for new products for distribution to television, and in fact negotiated the Debbie Drake Show at a substantial profit to the company.'' 2. The affidavit of plaintiff in support of his motion requesting leave to file the proposed amended complaint, stating '' [t]hat at the time of the filing of the original complaint in the above-entitled action and at the time of the pre-trial, this affiant did not know that the defendant, through his employee, had negotiated the distribution of the 'Debbie Drake' show at a substantial profit to Banner Films, and defendant did not reveal the fact that he had discussed the 'Debbie Drake' show with Mr. McGregor, or anyone else, and the written statement of the proposals submitted to the company, as required under the terms of the option agreement, had concealed that fact from affiant, which is the concealment of a material fact.''

 Code of Civil Procedure section 473 authorizes the trial court to allow substantive amendments ''in its discretion.'' The cases have established a policy of great liberality in allowing such amendments at any stage of the proceeding. (*Saari* v. *Superior Court,* 178 Cal.App.2d 175 [2 Cal.Rptr. 856]; *Legg* v. *Mutual Benefit etc. Assn.,* 162 Cal.App.2d 409 [327 P.2d 943]; *Youngblood* v. *City of Los Angeles,* 160 Cal. App.2d 481 [325 P.2d 587].) But when an order granting or denying leave to amend is attacked on appeal, another policy enters the picture—that the trial court's ruling should be up-

held unless there is a clear abuse of discretion. (See 2 Witkin, Cal. Procedure, § 594.) An examination of this record discloses that the trial court did not abuse its discretion in denying the motion to amend. Among the factors bearing on its decision was its conditional order granting a continuance on May 29. Counsel accepted the benefits of that order—"Mr. Fischgrund: Fine. That is perfectly all right"—and then sought to ignore its limitations, which contained a clearly expressed intention to have the cause proceed to trial on the pretrial order and original pleadings. No leave to present a new complaint at the time of trial was given or suggested. The court was speaking of "such application as may be made to the trial judge in the course of the trial with respect to amendments" and "plaintiff's right to seek at the time of trial such amendments as he may attempt to secure." Furthermore, in his argument to the court, counsel for plaintiff stated that he realized after reading the depositions that an amended complaint should be filed. If this is true, there is no reason why O'Melveny & Myers, plaintiff's former counsel, could not have sought an amendment at an earlier time. Plaintiff's position in this respect is not improved by the substitution of counsel at the last moment.

 Additionally, a close reading of the proposed allegation quoted above discloses a studious avoidance of the charge that defendant *knew* of the negotiations regarding the Debbie Drake show before the auction. The charge that the show "was negotiated at a substantial profit" omits the mention of dates. The affidavit in support of the motion is subject to the same objection. Although the allegations might be adequate to survive a demurrer for uncertainty, their vague nature was a matter for consideration by the court in ruling on a proposed amendment nearly a year after the action was brought.

 "It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which amount to mere conclusions. . . . Fraud being a term which imputes venality and corruption to the person charged, should be clearly proved and satisfactorily established. . . ." (*Hannon v. Madden,* 214 Cal. 251, 267 [5 P.2d 4].) (To the same effect see *Lawrence v. City of Santa Rosa,* 53 Cal.2d 282, 283 [1 Cal.Rptr. 339, 347 P.2d 683]; 23 Cal.Jur.2d § 64, p. 156.) Although this vagueness of allegation would not necessarily prevent an amendment, the court properly considered the nature of the

action in deciding whether the defendant should be required to meet charges completely different from those he had been preparing to defend over the preceding year.

Furthermore, the court reasonably could have entertained the opinion that an amendment would require a continuance. Before the court was a declaration of defendant in opposition to the motion for continuance stating that defendant would be prejudiced by such an order in various respects, including the presence of out of state witnesses (one from London) and claiming that the delay of the lawsuit would prevent Banner Productions from meeting business commitments, thus subjecting it to claims for damages.

Appellant argues that the substitution of entirely new specifications of fraud did not introduce a new cause of action and therefore the amended complaint should have been allowed. Numerous cases dealing with the question of what constitutes a different cause of action are cited and quoted, among them *Klopstock* v. *Superior Court,* 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318]; and *Frost* v. *Witter,* 132 Cal. 421, 427 [64 P. 705, 84 Am.St.Rep. 53]. This question of whether an amendment imports into the complaint an entirely new cause of action arises most often in cases involving the statute of limitations and the problem of whether the proposed amendment if allowed would defeat that plea. *Frost* v. *Witter* is such a case. ■ *Klopstock* illustrates the companion rule that an amendment which sets up a new cause of action as therein defined cannot be permitted; the fact of a new cause disqualifies the amendment per se. But that case does not hold, nor do any others of which we are aware, that the fact that a proposed amendment does not state an entirely new cause of action imposes upon the court the duty of permitting its filing. The authorities nowhere establish a rule to the effect that plaintiff may at any time file any amendment he desires so long as it does not state an entirely new cause of action. In most instances, as here, the problem of an absolute bar to amendment is not involved and the judge is required to determine in the exercise of a sound judicial discretion whether the proffered amendment should be received. That discretion is a broad one and its exercise will be upheld unless there plainly has been an abuse of it.

■ *Moss Estate Co.* v. *Adler,* 41 Cal.2d 581, 585 [261 P.2d 732]: "Although it is true, as defendant contends, that amendments should be liberally allowed so that all of the issues may be properly presented, the question whether the

filing of an amended pleading should be allowed at the time of trial is ordinarily committed to the sound discretion of the trial court. (Code Civ. Proc., § 473.)'' *Vogel* v. *Thrifty Drug Co.*, 43 Cal.2d 184, 188-189 [272 P.2d 1]: "It is a basic rule of pleading in this state that amendments shall be liberally allowed so that all issues material to the just and complete disposition of a cause may be expeditiously litigated, but 'the question whether the filing of an amended pleading should be allowed at the time of trial is ordinarily committed to the sound discretion of the trial court.' (*Moss Estate Co.* v. *Adler* (1953) 41 Cal.2d 581, 585 [261 P.2d 732].) In the *Moss Estate* case, twelve days before the trial date and more than a year after the original answer was filed, the defendant served notice of motion for leave to file an amended answer alleging a new defense based on different facts; no excuse for the delay was given; the trial court denied the motion and we affirmed. Here, the original complaint, based on the theory of negligence, was filed May 23, 1951, an amended complaint based on the same theory was filed August 16, 1951, and it was not until May 1, 1952, the day of trial, that the motion to file the amendment aimed at introducing a cause of action based on breach of warranty was presented to the court. The record shows no excuse for the tardiness in proposing the new cause of action which, though arising from the same transaction, would inject new issues of law and fact, and, more important still, as hereinabove pointed out the proffered amendment was defective in not pleading an essential element of the new theory of liability. Under such circumstances we cannot hold that the trial court abused its discretion in denying plaintiff's motion.''

Plaintiff's new attorney, Mr. Fischgrund, did not content himself with proffering specific amendments during the trial, which right had been reserved to him by the judge's order; he came in at the last minute with an entirely new set of charges of fraud which, if allowed, would have required a long continuance for the purpose of canvassing wholly new factual issues, a redoing of the elaborate discovery procedures previously had, all of which would have imposed upon defendant and his witnesses substantial inconvenience (one of them had come from London for the trial and another from Dallas, Texas) and upon defendant needless and substantial additional expense. Indeed, counsel's whole maneuver had the aroma of trifling with the court and by attrition bringing the opponent into a compromise. Though his briefs on appeal

argue mainly the alleged concealment of the Debbie Drake situation, counsel at no time sought leave to make an amendment relating to that matter except as a part of the proposed new complaint which discarded the eight original specifications of fraud and substituted nine new ones for them. The court did not err in denying leave to file the proposed amended complaint.

Though it does not appear that the trial judge based his ruling upon the point, the record furnishes an additional and conclusive reason for denial of the motion. ▮▮▮ Of course, the judge's reasoning is immaterial if his ruling proves to be correct (4 Cal.Jur.2d § 536, p. 390). ▮▮▮ By the time of trial plaintiff had committed himself to a partial rescission of an indivisible contract. The settled rule is that one who would rescind for fraud or other reason cannot cling to the portion of the deal which he deems favorable and reject the balance. He must rescind the contract as a whole or not at all.

*Simmons* v. *California Institute of Technology,* 34 Cal.2d 264, 275 [209 P.2d 581] : ''The general rule is that one must rescind all of his contract and may not retain rights under it which he deems desirable to have and repudiate the remainder of its provisions. (*Buena Vista Fruit & Vineyard Co.* v. *Tuohy,* 107 Cal. 243 [40 P. 386] ; *Bohall* v. *Diller,* 41 Cal. 532 ; *Purdy* v. *Bullard,* 41 Cal. 444; *Jones* v. *Bay Cities Electric Co.,* 22 Cal.App. 81 [133 P. 492].) The theory underlying such a rule is that retention of only the benefits of the transaction amounts to unjust enrichment and binds the parties to a contract which they did not contemplate. This rule, however, is not controlling in the case of a severable or divisible contract such as Exhibit 'B.' Generally speaking, the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, the contract may be regarded as severable.'' Restatement of the Law of Contracts, section 487, page 930 : ''A transaction voidable for fraud or misrepresentation cannot be avoided in part, except that where an entire instalment of a divisible contract has been fully performed on one or both sides the other portions of the contract can be avoided.'' Volume 17 Corpus Juris Secundum section 416, page 900 : ''An indivisible contract may be rescinded only in its entirety. A rescission must be in toto. A party cannot affirm a contract in part and repudiate it in part. He cannot accept the benefits on the one hand while he shirks its disadvantages on the other, unless the two parts of the contract are so severable from each

other as to form two independent contracts.'' To same effect are *Buena Vista Fruit & Vineyard Co.* v. *Tuohy,* 107 Cal. 243, 253 [40 P. 386]; *Bohall* v. *Diller,* 41 Cal. 532, 535-536; *Purdy* v. *Bullard,* 41 Cal. 444, 448; *Jones* v. *Bay Cities Electric Co.,* 22 Cal.App. 81-90 [133 P. 492]; see also 77 Corpus Juris Secundum section 101, page 798; 9 American Jurisprudence section 67, page 403; 12 American Jurisprudence section 444, page 1027; 46 American Jurisprudence section 774, page 905; Note 148 American Law Reports 417 at pages 418, 424. ''A 'divisible contract' is defined by Williston as one 'under which the whole performance is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor.' (3 Williston, Contracts [rev. ed.] p. 2408.)'' (*J. C. Peacock, Inc.* v. *Hasko,* 196 Cal.App.2d 353, 361 [16 Cal.Rptr. 518].)

In the present instance the notice of rescission undertook to rescind the entire transaction: ''Please be advised that I do hereby rescind and cancel the purported agreement of July 6, 1960, and any other purported agreements, in reference to the purchase and sale of our respective stock interests in Banner Productions, Inc.; and the so called auction in which we participated on July 15, 1960, in which you purportedly purchased my stock interest in the aforesaid Corporation.'' The original complaint prays for both complete and partial rescission: ''1. That the contract to sell plaintiff's shares to defendant for $225,000, and delivery of plaintiff's shares to Leon Kaplan, Esq., pursuant thereto, be declared null and void and of no effect. . . . 3. That plaintiff and defendant be ordered to resume the auction at the point where defendant had made his bid of $225,000, that plaintiff be allowed to make a higher bid, and that the auction thereafter continue pursuant to the terms of the Auction Contract until the party making the next to last bid fails or refuses to make any further bid.'' But the joint statement presented at the pretrial conference says: ''By this action, plaintiff seeks to reopen the bidding at the auction. Neither plaintiff nor defendant *seeks to set aside the Auction Agreement.*'' (Emphasis supplied.) Of course, defendant had no intent or desire to reopen the bidding; he sought by cross-complaint specific performance of the agreement including delivery of the stock to him. Appellant thus appeared before the court on the day of trial definitely committed to pursuit of a partial rescission, a position to which he now adheres. His reply brief says:

"Appellant is now seeking to have this auction reopened so that he may have a fair opportunity to bid."

The deal was not severable. It was a contract for sale of stock through a private auction and at a price represented by the highest bid. The bidding merely fixed the price. Upon principle and authority plaintiff could not rescind as to the price and hold onto the agreement to sell at a price fixed as therein prescribed. Had the amended complaint been filed plaintiff could have recovered no relief thereunder, and the issues had been so narrowed at the pretrial that plaintiff could not possibly succeed. Whatever may have happened later at the trial, by way of enlargement of the issues or otherwise, cannot affect the question under discussion for it is whether the court correctly denied leave to amend, a question which must be viewed in the circumstances then existing, and manifestly the answer to the question is that the court's ruling was correct.

Although plaintiff was not permitted to file an amended complaint alleging fraudulent acts not originally pleaded, he sought to have proof of these acts admitted in evidence. Counsel advance the theory that evidence of other frauds is admissible in support of those alleged. The trial court refused to receive such evidence and error is claimed. Appellant's counsel do not advise us of the specific rulings involved in the refusal of evidence of other frauds; they content themselves with generalities. However, we gather from the briefs that the proffered evidence covered the frauds newly alleged in the proposed amended complaint. For instance, we find counsel at page 84 of a 603-page transcript making an offer of proof in support of the allegations of the proposed amended complaint. In connection with the sustaining of objection thereto the court said: "If you have some conversations or any conversations at any time that relate to the issues framed by your pleadings, direct your client's attention to those matters and let's move along." Again, at pages 96, 132, 279 and 620, we find counsel persisting in offering evidence in support of his rejected amended complaint.

In deciding whether to admit evidence of other frauds, a court must balance its relevancy (as indicating a general fraudulent scheme or intent) against the possible prejudice which would arise. (McCormick, Evidence, §§ 163-164.) It cannot be said that the trial court abused its discretion in this respect. Furthermore, this was a court-tried case, and it is difficult to conceive of a different result "more probably" obtaining had the trial court admitted such evi-

dence (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]), for the proofs abundantly sustain the findings.

Plaintiff also contends that the trial court erred in refusing to grant a new trial. The grounds asserted are newly discovered evidence (relating to the Debbie Drake show) and error in law (failing to permit the filing of an amended complaint and refusing to admit evidence relating to the Debbie Drake show). The crux of plaintiff's affidavit in support of his motion is contained in the statement, "[a]s shown by annexed affidavit by John J. Cole and the witnessed statement of Bernard L. Schubert, defendant had personal knowledge of that asset at the time of our June 1960 conferences and at the time of the auction . . . ." The Cole statement is as vague in nature with reference to knowledge of defendant before July 15, 1960, as the allegations in the proffered amended complaint and its supporting affidavit. Schubert's statement indicates only that McGregor, president of Banner Films, was familiar with the Debbie Drake show negotiations at the critical time. McGregor's affidavit in opposition to the motion states that on July 2, 1960, he spoke to Marvin Hayutin, plaintiff's brother, about current and pending assets of Banner Films. Marvin had been sent by plaintiff to get this information for purposes of the auction. McGregor says he then told Marvin the details of the Debbie Drake show negotiations, and that he had *not* told either plaintiff or defendant about the show because nothing had been definitely settled.

Moreover, it plainly appears that this was not newly discovered evidence for purposes of motion for new trial. Volume 36 California Jurisprudence 2d section 76, page 235: "Evidence is newly discovered in the sense referred to in the statute governing new trials if it is material to the party making the application and was not known or accessible to him at the trial. It must have been newly discovered either after the trial or too late to have been produced at the trial. Moreover, the evidence, and not merely its materiality, must be newly discovered. Evidence within the knowledge of the moving party before the action was begun, while the case was pending, or which under the circumstances must have been known to the moving party at the trial, or by the use of reasonable diligence might have been known and produced at the trial, may not be regarded as newly discovered." The opening brief says: "The newly discovered evidence upon which the motion for a new trial was based was that the defendant failed to disclose to plaintiff prior to July 15, 1960,

the date of the auction, that the wholly owned subsidiary of Banner Productions owned a valuable asset in The Debbie Drake Show. As previously discussed herein, the court had not allowed plaintiff to amend his complaint to set forth this allegation of fraud, nor had the court during the trial allowed plaintiff to introduce evidence relating to this fraudulent concealment.'' Counsel averred this alleged concealment in the proposed amended complaint and insisted upon proving it at the trial. In pressing the motion to amend he asserted that his proposal so to do grew out of his examination of the depositions: ''I immediately realized that it should be done after reading about 12 volumes of depositions.'' Plaintiff's counsel had examined Louise Graham about the Debbie Drake show upon the taking of her deposition on May 1, 1961. There was no error in the ruling upon the motion for new trial.

Plaintiff's last assertion of error challenges the finding of the trial court that ''because of the disputes, controversies and differences between plaintiff and defendant, no confidential relationship existed between them . . . .'' The complaint alleges no such relationship, although it does refer in passing to ''defendant's fiduciary relationship to plaintiff'' (par. 11). The bare fact of ownership of 50 per cent of the stock of the corporation by each of the two litigants did not create a fiduciary status with respect to each other or a confidential relationship. (*Ryder* v. *Bamberger,* 172 Cal. 791, 806 [158 P. 753]; *McCord* v. *Martin,* 47 Cal.App. 717, 724 [191 P. 89]; 18 C.J.S. § 491, p. 1168; 13 Fletcher Cyclopedia, Corporations (perm. ed.) § 6743, p. 52.)

The court in *Vai* v. *Bank of America,* 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], explained in a case involving disputes between spouses the distinction between fiduciary and confidential relationships. The opinion says, in part: '' 'A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. A confidential relation may exist although there is no fiduciary relation; it is particularly likely to exist where there is a family relationship or one of friendship or such a relation of confidence as that which arises between physician and patient or priest and penitent.' (Rest., Trust 2d, § 2, comment b.)

''The confidential relationship and obligations arising out of it are, therefore, dependent upon the existence of confidence and trust, but the husband's fiduciary duties in respect to his wife's interest in the community property continue as

long as his control of that property continues, notwithstanding the complete absence of confidence and trust, and the consequent termination of the confidential relationship. The prerequisite of a confidential relationship is the reposing of trust and confidence by one person in another who is cognizant of this fact. The key factor in the existence of a fiduciary relationship lies in control by a person over the property of another.'' (Pp. 337-338.)

Defendant asserted to plaintiff and contended below that upon his return from abroad he discovered that plaintiff had permitted his brother Marvin to misuse for his own purposes credit cards of the corporation; that plaintiff had charged exorbitant and usurious interest of one and three-fourths per cent a month upon a loan of $37,500 to the company; that he had instructed the bookkeeper to hide expenses of $4,000 incurred by Marvin on a personal trip to Peru; that he, defendant, charged plaintiff with dishonesty and told him he did not trust his integrity; that he had mismanaged the business and defendant did not want to continue in business with him and demanded the termination of their relationship. Plaintiff reciprocated with recriminations, was very critical of defendant's management and believed defendant was dishonest. Mr. Hayutin: ''I was suspicious of everything.'' These differences culminated in the agreement for sale by private auction.

Appellant's contention appears to be that as a matter of law disputes do not dissolve a confidential relationship. But the cases cited (*Stevens* v. *Marco,* 147 Cal.App.2d 357 [305 P.2d 669]; *Sime* v. *Malouf,* 95 Cal.App.2d 82 [212 P.2d 946, 213 P.2d 788]) merely hold that disputes do not necessarily disrupt confidential relations. Whether or not a disruption in friendly relations destroys one party's confidence in another is a question of fact. (*Sime* v. *Malouf, supra,* at p. 99.) Furthermore, the court found that defendant made no fraudulent misrepresentations or concealments and that plaintiff did not rely on any representations of defendant; hence it became immaterial whether any confidential relation existed or had existed between the two parties.

The order denying new trial is not appealable. It is reviewable upon appeal from the judgment and has been so reviewed herein. Appeal from order denying new trial is dismissed.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.