[Civ. No. 2845.   Third Appellate District.—November 25, 1925.]

W. R. FEDEROFF, Respondent, v. BIRKS BROS. (a Copartnership, etc.) et al., Appellants; H. B. WHITTEN, Cross-defendant and Respondent.

[1] COSTS—EXPENSE OF DEMONSTRATING TRUCK—ERRONEOUS ALLOWANCE.—In this action, which was tried three times, plaintiff having offered to pay all expenses of demonstrating the truck at the second trial, and the court having ordered the demonstration made on condition that plaintiff pay the expenses thereof, and at the third trial no demonstration having been made, the court, in taxing the costs to be recovered by plaintiff, erred in allowing the items of expense for demonstrating the truck at the second and third trials.

[2] ID. — MILEAGE FEES — ACTUAL MILEAGE. — The mileage fees to which residents of the city of Sacramento are entitled when subpoenaed as witnesses at a trial at the county seat of another county are to be computed on the actual mileage, and not the legal distance from Sacramento as fixed by section 150 et seq. of the Political Code.

---

(1) 15 C. J., p. 108, n. 96 New.   (2) 15 C. J., p. 955, n. 3, 4; 36 Cyc., p. 1110, n. 54, p. 1111, n. 63, p. 1165, n. 82, p. 1169, n. 19 New; 40 Cyc., p. 2189, n. 55.

APPEAL from an order of the Superior Court of Sutter County taxing costs. K. S. Mahon, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Arthur C. Huston and Arthur C. Huston, Jr., for Appellants.

John R. Connelly and Arthur Coates for Respondent.

---

2.  See 27 Cal. Jur. 189.

FINCH, P. J.—This is an appeal from an order taxing costs. Plaintiff recovered judgment in the action and in due time thereafter served and filed a memorandum of his costs and disbursements. Appellant filed a motion to have the costs taxed by the court, objecting therein to certain items claimed by plaintiff The court overruled the objections and taxed costs in the amount stated in the memorandum. The action was tried three times. [1] Two items allowed as costs were for the expenses of demonstrating a truck, $10.35 at the second trial and $9.50 at the third. Relative to such demonstrations, the bill of exceptions contains the following:

"That as to the item charged for the expenses of demonstrating the truck on the second trial, it was shown that at such trial the following stipulations and order were made by the court:

"(After argument as to offer to demonstrate truck.) The Court—If you had offered to bear the expense of the repairs to this truck, it would be different, but I am not going to saddle the expense of that on— Mr. Connelly— That is understood, we will pay all expense. The Court— That wasn't understood. Mr. Connelly—We include that in the offer, we will pay the expenses of it. The Court— I haven't any reasonable assurance it can be done between now and meeting time in the morning. Mr. Connelly—If it cannot be done by that time we are willing to waive it, we are willing to pay all expenses. (Argument.) The Court—I will make the order that the plaintiff at his expense may pay for the repairs and have it loaded if he can have it done by 10 o'clock tomorrow morning.

"That as to the item charged for the expenses of demonstrating the truck on the third trial of said action it was shown that there was no demonstration of said truck during the trial."

It thus clearly appears that at the second trial the plaintiff offered to pay all expenses of the demonstration and that the court ordered the demonstration made on condition that plaintiff pay the expenses thereof. At the third trial no demonstration was made. It must be held, therefore, that those two items were improperly allowed.

[2] Certain items were allowed as mileage fees paid to residents of Sacramento who were witnesses at the trial.

Section 1989 of the Code of Civil Procedure provides: "A witness is not obliged to attend as a witness before any court, judge, justice, or any other officer, out of the county in which he resides, unless the distance be less than fifty miles from his place of residence to the place of trial." Section 4300g of the Political Code provides for witness fees as follows: "For each day's actual attendance, when legally required to attend upon the superior court, per day, two dollars in civil cases. . . . Mileage actually traveled, one way only, per mile, ten cents." Evidence produced at the hearing of the motion shows that the actual distance from Sacramento to Yuba City, the county seat of Sutter County, is forty-five miles. Appellants contend that, notwithstanding such actual distance, title III, part II, sections 150 to 208, of the Political Code, is controlling. Section 200 fixes the legal distance from Sacramento to Yuba City at fifty-eight miles. Appellants argue that such witnesses were "not obliged to attend" and that, therefore, they were not entitled to any allowance for mileage.

Section 150 reads: "The legal distances in this state are fixed as follows": Then follow sections 150 to 207, fixing the respective distances from the several county seats of the state to Sacramento. Section 208 reads: "When mileage is allowed by law to any person, the distance must be computed as herein fixed." Appellants rely upon *Hegard* v. *California Ins.* Co., 2 • Cal. Unrep. 663 [11 Pac. 594], where it is said: "The sections of the Political Code, *supra,* established the legal distances therein set out without any qualification, and hence they are established for any and all purposes." The opinion cited is not the decision of the court, however, as a rehearing was granted and the decision of the court in bank is reported in 72 Cal. 535 [14 Pac. 180, 359]. No reference appears therein to the question of legal distances. If the legal distances fixed by the Political Code were adopted "for any and all purposes" some surprising results would follow. The distances to Sacramento from Yuba City and Marysville, respectively, are fifty-eight and fifty-two miles. Mathematically, therefore, the shortest possible distance between Yuba City and Marysville is six miles. Actually, however, they are separated only by the width of Feather River. If such legal distances are controlling in a case such as

this, then a resident of Sacramento, when subpoenaed by the superior court of Sutter County, would not be "obliged to attend as a witness"; but one so served who resides four miles south of Sacramento, and therefore four miles farther from the county seat of Sutter County, would be obliged to attend, he being within the actual limit of fifty miles fixed by section 1989 of the Code of Civil Procedure and the legal distance from his residence to Yuba City not having been established by legislative enactment. Section 208 of the Political Code does not relate to the mileage fees which a witness may collect, because he is entitled to such fees for only the "mileage actually traveled."

The history of the legislation covering the subject matters embraced in title III indicates that the distances therein fixed were intended to be applied only in computing mileage fees allowed by law to officers and others traveling between the city of Sacramento and the several county seats in the state. It was so held in *Neely* v. *Naglee,* 23 Cal. 152. In 1854 an act was passed entitled "An act defining the legal distances from each county seat in the state of California to the state capital at Sacramento, the state lunatic asylum at Stockton, and the state prison at San Quentin." (Stats. 1854, p. 78.) Section 1 of the act read as follows: "The distances established by this Act shall be, and the same are hereby declared to be the legal distances for which mileage shall be allowed to the state Capital at Sacramento: First: For County Treasurers in settling their accounts. Second: For conveying the insane to the Asylum at Stockton. Third: To Sheriffs for transporting prisoners to the State Prison at San Quentin." In 1858 an act in substantially the same terms as to title and purposes was passed and the former act was expressly repealed. (Stats. 1858, p. 256.) In 1872 the provisions of the latter act and the amendments thereto were incorporated into the Political Code as title III, part II, sections 150 to 201. Section 201 was in the identical language of the present section 208, the provisions thereof never having been changed. Viewed in the light of the prior legislation on the subject, that provision shows the purpose and intent of the legislature as fully as did section 1, *supra,* of the act of 1854. "The incorporation of the statute in the code cannot be said to have a greater

effect upon its meaning than an amendment thereof would have had. Where a statute is amended, the parts which are not altered are to be considered as having been the law from the time when they were enacted." (*San Joaquin etc. Irr. Co. v. Stevinson,* 164 Cal. 221, 234 [128 Pac. 924].) "To arrive at the legislative intent the original purpose and object of the legislation must be considered." (*Mackey* v. *Mott,* 25 Cal. App. 110, 115 [142 Pac. 1082, 1084].) "Ordinarily it is the rule that, when the law-making power distinctly states its design in the enactment of a particular statute, no room is left for construction." (*Coulter* v. *Pool,* 187 Cal. 181, 185 [201 Pac. 120, 122].) "The statute, like all statutes, must be read in view of the evident purpose of the legislature in its enactment." (*Dillingham* v. *Welch,* 179 Cal. 656, 658 [178 Pac. 512, 514].)

The order is modified by striking out the items of $10.35 and $9.50 for demonstrations of the truck, and as so modified the order is affirmed, appellants to recover costs of appeal.

Hart, J., and Plummer, J., concurred.