[Civ. No. 43440. First Dist., Div. One. Dec. 14, 1979.]

LEW WARDEN, Plaintiff and Appellant, v.
MELVIN KAHN et al., Defendants and Respondents.

COUNSEL

Lew Warden, in pro. per., and Arthur L. Pretzer for Plaintiff and Appellant.

Demanes & Bailey, Bruce A. Bailey, Moore, Clifford, Wolfe, Larson & Trutner and J. Jay Schnack for Defendants and Respondents.

OPINION

**GRODIN, J.**—Plaintiff Lew Warden's appeal is from the superior court's judgment dismissing his action against defendants Melvin Kahn, Julius Kahn, Lorin Blum, and Blum & Blum, a law corporation. That judgment includes the dismissal of plaintiff's first amended complaint on the ground that it fails to state a cause of action against any of the defendants, and the dismissal of plaintiff's second amended complaint on the ground that its contents exceeded the permission which the court had granted for the filing of an amended pleading. Our conclusion is that the court did not abuse its discretion in dismissing the second amended complaint or the first amended complaint as to defendants other than Melvin Kahn, but that the first amended complaint stated a cause of action against defendant Melvin Kahn under certain provisions of the Invasion of Privacy Act, Penal Code section 630 et seq., and should not have been dismissed as to him.

### PROCEDURAL BACKGROUND

The first amended complaint alleged that plaintiff Warden, an attorney at law, had represented defendant Melvin Kahn from 1964 to 1974 in "disputes and litigations" between Melvin Kahn and others; that following enactment of the Invasion of Privacy Act in 1967 Melvin Kahn "did secretly and without the knowledge and consent of plaintiff record

telephone conversations between plaintiff and said Melvin Kahn" concerning such matters; that Melvin Kahn made the recordings of such conversations available to the defendant Julius Kahn; and that Julius Kahn communicated the contents thereof and made the recordings available to the defendants Lorin Blum and Blum & Blum, a law corporation, for the use of defendant Julius Kahn in "presenting fraudulent claims against plaintiff, and to extort settlements and/or monetary concessions from plaintiff to said Julius Kahn to which said Julius Kahn was not justly entitled." The prayer for relief sought judgment under Penal Code section 637.2 for damages and injunctive relief.

Defendant Melvin Kahn filed an answer to the first amended complaint by which he admitted recording "important telephone conversations between himself and plaintiff," but asserted (among other defenses) that the recording was with the knowledge and consent of plaintiff. Defendant Julius Kahn, however, demurred generally to the first amended complaint. On January 24, 1977, the trial court sustained the demurrer with 30 days' leave to amend. On February 4, 1977, Melvin Kahn moved for summary judgment and judgment on the pleadings. On February 22, 1977, before the motion could be heard, plaintiff filed a second amended complaint, 25 pages long, alleging extensive factual matters unrelated to the first amended complaint, and presenting a potpourri of additional theories and causes of action based on conspiracy, including fraud, deceit, defamation, malicious prosecution, intentional interference with contracts and business relations, and intentional and wrongful infliction of severe emotional and mental distress. Allegations with respect to recorded telephone conversations appeared in the new pleading as one of the many overt acts which ripened into the conspiracy. Melvin Kahn moved to strike the second amended complaint on the ground that, except for the allegations concerning the recordings, the new pleading set forth "wholly different causes of action," and on May 16, 1977, the trial court entered an order granting the motion and at the same time dismissing the first amended complaint for failure to state a cause of action. Judgment was entered accordingly, and plaintiff filed timely notice of appeal.

Appellant's challenge to the propriety of the trial court's action in striking his second amended complaint need not detain us long. The first amended complaint was founded solely on defendants' alleged violation of the Invasion of Privacy Act. The second amended complaint stated entirely new causes of action, alleging violation of an entirely dif-

ferent primary right, and was based upon an entirely different set of facts. Although, of course, great liberality will ordinarily be allowed in the amendment of a complaint after the sustaining of a demurrer, it is settled law that a party may not file an amended complaint which states such an entirely new and different cause of action. (See *Smeltzley v. Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 934 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]; *Austin v. Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681]; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 20-21 [108 P.2d 906, 135 A.L.R. 318]; *Barba v. Superior Court* (1966) 239 Cal.App.2d 572, 577-578 [49 Cal.Rptr. 60]; *Hayutin v. Weintraub* (1962) 207 Cal.App.2d 497, 506-507 [24 Cal.Rptr. 761]; *Lewis & Queen v. Edmondson & Sons* (1952) 113 Cal.App.2d 705, 711 [248 P.2d 973].) The superior court did not err in striking plaintiff's second amended complaint.[1]

We return, therefore, to the first amended complaint and consider whether it was properly dismissed. The Invasion of Privacy Act upon which that complaint was based was adopted in 1967 and replaced what one commentator has characterized as a "hodgepodge of statutes." (Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1190 (hereafter Van Boven).) The dominant objective of the act, as reflected in its preamble, is "to protect the right of privacy of the people of this state." (Pen. Code, § 630. See *People v. Conklin* (1974) 12 Cal.3d 259, 270 [114 Cal.Rptr. 241, 522 P.2d 1049]; *Tavernetti v. Superior Court* (1978) 22 Cal.3d 187, 194 [148 Cal.Rptr. 883, 583 P.2d 737]. See also Cal. Const., art I, § 1.) While Congress adopted a partially congruent statute, title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C.A. §§ 2510-2520), the federal enactment does not preclude the application of state standards which, as in the case of California's statute, apply more restrictive rules. (*People v. Conklin, supra,* 12 Cal.3d at pp. 271-272. See also Carr, The Law of Electronic Surveillance (1977) § 2.04.)

The Invasion of Privacy Act provides criminal penalties for the offenses which it describes, but in addition, in section 637.2, it establishes

---

[1]Plaintiff also contends in his brief that the trial court erred in precluding plaintiff from filing a *third* amended complaint. No record reference is made to any such judicial act, or to any request for permission to file such a complaint. (See Cal. Rules of Court, rule 15(a).) We find no merit in this contention.

a private cause of action on the part of "[a]ny person who has been injured by a violation of this chapter...against the person who committed the violation...." Appellant claims that his first amended complaint states facts constituting a violation of sections 631 and 632, the relevant portions of which are set forth in the margin.[2]

■ Insofar as section 631 is concerned, appellant's claim is without merit. That section, which is quite ambiguous,[3] has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation. (*Rogers v. Ulrich* (1975) 52 Cal.App.3d 894 [125 Cal.Rptr. 306].)

---

[2]Penal Code section 631: "(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any such wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison...."

Penal Code section 632: "(a) Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication, whether such communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punishable by fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both such fine and imprisonment in the county jail or in the state prison.... [¶] (b) The term 'person' includes an individual, business, association, partnership, corporation, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording such communication. [¶] (c) The term 'confidential communication' includes any communication carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

[3]As one commentator has observed, referring to section 631, "[t]he antecedents of this complex statute date back to 1862 and, as a result of numerous previous amendments, it is badly in need of simplification." (Van Boven, *supra*, 57 Cal.L.Rev. at p. 1200.) Section 631 contains two separate clauses dealing with wiretapping activities,

Section 632 is a different matter. Its provisions "are much more straightforward than section 631, probably because they are of later origin." (Van Boven, *supra,* 57 Cal.L.Rev. at p. 1203.) The language of that section applies to any person who "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, *eavesdrops upon or records* such confidential communication." This language has uniformly been construed to prohibit one party to a confidential communication from recording that communication without knowledge or consent of the other party. (*Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal.App.3d 188 [133 Cal.Rptr. 573] (Second Dist.); *People v. Wyrick* (1978) 77 Cal.App.3d 903, 909 [144 Cal.Rptr. 38] (Third Dist.); see also *Rogers v. Ulrich, supra,* 52 Cal.App.3d at p. 899 (First Dist.) (dicta).)[4] This construction is not only upon the language of section 632 itself, but, as Justice Ashby's opinion in *Olson* notes,[5] upon legislative history and other provisions of the statute. The language derives from former section 653j (Stats. 1963, ch. 1886, § 1, p. 3871), which ap-

---

the first making it an offense to "[tap], or [make] any unauthorized connection" with telephone or telegraph wires or equipment and the second forbidding the interception of messages in transit or during transmission and reception "without the consent of all parties." (See Van Boven, *supra,* 57 Cal.L.Rev. at pp. 1200-1201.) The second clause clearly has no application to participant recording, and the operative terms of the first clause are "vague and nowhere defined." (*Rogers v. Ulrich, supra,* 52 Cal.App.3d at p. 898.) Section 631 has been referred to as being in some respects "patently ambiguous." (*People v. Wilson* (1971) 17 Cal.App.3d 598, 602 [94 Cal.Rptr. 923].) Since we are dealing with a penal statute, language so ambiguous should be interpreted in favor of the alleged violator. (*People v. Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401]; *In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553]; and see *Keeler v. Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People v. Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675].)

[4]In *People v. Buchanan* (1972) 26 Cal.App.3d 274, 288 [103 Cal.Rptr. 66], and in *People v. Soles* (1977) 68 Cal.App.3d 418, 420 [136 Cal.Rptr. 328], there is language to the effect that the privacy act applies to "eavesdropping," but in neither case was that language remotely related to the issue under consideration here. In *Buchanan,* the question was whether the statute proscribes only intentional, as opposed to inadvertent, overhearing or intercepting of communications (26 Cal.App.3d at p. 287), and in *Soles* the question was whether the action of a motel manager in staying on the line after connecting an incoming call with the telephone of a guest constituted "electronic eavesdropping" within the meaning of the statute (68 Cal.App.3d at p. 420). Neither case involved participant recording. (Cf. also *People v. Superior Court (Young)* (1970) 13 Cal.App.3d 545, 548-549 [91 Cal.Rptr. 699]; *People v. Jones* (1973) 30 Cal.App.3d 852, 854-855 [106 Cal.Rptr. 749]; *People v. Carbonie* (1975) 48 Cal.App.3d 679, 685 [121 Cal.Rptr. 831].)

[5]Contrary to the implication in the dissenting opinion, the *Olson* opinion does not place its "sole reliance upon the authority of *Rogers v. Ulrich,*" but rather engages in an independent analysis of legislative history and language, from which this opinion borrows heavily.

plied only to a person or agent "not a party to the communication," who eavesdropped or recorded a confidential communication "without the consent of any party." Since the quoted language represents practically the only changes from the former statute, the implication of legislative intent to make section 632 applicable to participant recording seems reasonably substantial. That implication is underscored by section 633.5, which provides that "[n]othing in Section 631 or 632 shall be construed as prohibiting one party to a confidential communication from recording such communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to such communication of [certain specified crimes]." As the appellate court noted in *Forest E. Olson, supra,* the presence of section 633.5 in the Invasion of Privacy Act is inexplicable except on the assumption that the Legislature intended at least some portion of the act to apply to participant recording.[6] (63 Cal.App.3d at p. 192.)

Finally, coverage of participant recording is consistent with the legislative policy declared in section 630 "to protect the right of privacy of the people of this state." While it is true that a person participating in what he reasonably believes to be a confidential communication bears the risk that the other party will betray his confidence, there is as one commentator has noted a "qualitative as well as a quantitative difference between secondhand repetition by the listener and simultaneous dissemination to a second auditor, whether that auditor be a tape recorder or a third party." (Van Boven, *supra,* 57 Cal.L.Rev. at p. 1232.) "In the former situation the speaker retains control over the extent of his immediate audience. Even though that audience may republish his words, it will be done secondhand, after the fact, probably not in entirety, and the impact will depend upon the credibility of the teller. Where electronic monitoring is involved, however, the speaker is deprived of the right to control the extent of his own firsthand dissemination. . . . In this regard participant monitoring closely resembles third-party surveillance; both practices deny the speaker a most important aspect of

---

[6]Our dissenting colleague suggests that section 633.5 "may also be deemed but an iteration of the Act's preamble, proscribing only 'eavesdropping.'" If that were the function of section 633.5, however, there would certainly have been no reason to limit its application to the recording of only particular kinds of conversations.

We also disagree with our dissenting colleague's suggestion that section 637, insofar as it permits a party to a telephone communication to disclose its *contents* to others, is somehow inconsistent with an interpretation of section 632 as prohibiting *recording* of a conversation. For reasons stated elsewhere in our opinion, we find the distinction quite reasonable.

privacy of communication—the right to control the extent of first instance dissemination of his statements." (*Ibid.*) In terms of common experience, we are all likely to react differently to a telephone conversation we know is being recorded, and to feel our privacy in a confidential communication to be invaded far more deeply by the potential for unauthorized dissemination of an actual transcription of our voice. Van Boven states that California "is one of the few states to have outlawed participant monitoring by private parties. This was the major change effected by the 1967 Privacy Act . . . ." (*Id.*, at p. 1235.)

■ We are mindful of the general principle that in a criminal prosecution the defendant should be given the benefit of doubt as between two plausible interpretations of a penal statute. (E.g., *People v. Ralph, supra*, 24 Cal.2d at p. 581.) The other side of that principle is that it is "only an aid to construction and cannot be invoked until the statute is shown to be ambiguous or uncertain as applied to the particular defendant." (*People v. Alday* (1973) 10 Cal.3d 392, 395 [110 Cal.Rptr. 617, 515 P.2d 1169].) We do not find such ambiguity or uncertainty here. This is, of course, a civil rather than a criminal proceeding; but we note that our interpretation of section 632 has been applied in a criminal context, and upheld against constitutional attack based upon alleged indefiniteness. (*People v. Wyrick, supra*, 77 Cal.App.3d at p. 907.) The provisions of the Penal Code are to be construed "according to the fair import of their terms." (Pen. Code, § 4.) We believe the fair import of section 632 is in accord with the interpretation we express.

■ Respondents, in fact, concede that section 632 prohibits one party to a telephone conversation from intentionally recording a confidential communication without the knowledge or consent of the other. They contend that no "confidential communication" was involved because the circumstances were such that "the parties to the communication may reasonably [have] expect[ed] that the communication [would] be overheard or recorded." (Pen. Code, § 632, subd. (c).) They argue broadly that an attorney should have no basis for expecting that his consultation with a client will be secret or confidential, and they point to the fact that the attorney-client evidentiary privilege exists for the benefit of the client, not the attorney. They also argue more narrowly, based on the stipulated fact that Melvin Kahn is blind, that an attorney must be held as a matter of law to expect that his telephone conversations with a blind client will be recorded.

We are unable to accept either argument as a matter of law. The definition of "confidential communication" in section 632 transcends the ownership of an evidentiary privilege. It calls for a determination as to whether the "circumstances...reasonably indicate that any party to such communication desires it to be confined to such parties," or whether the circumstances are such that "the parties to the communication may reasonably expect that the communication may be...recorded." That one of the parties to the conversation is a client of the other, and "owns" a privilege which he may waive by testifying as to the contents of the conversation may well be part of the "circumstances" to be considered, but it is hardly determinative of the statutory issue. Similarly, the added fact that the client is blind may increase the likelihood of the attorney's expectation that the conversation will be recorded, but the statute does not permit us to elevate that probability to the level of a conclusive presumption.[7] If plaintiff chooses to persist in his action, the determination as to whether plaintiff knew or consented to the recording of his conversations by his client, or whether he should reasonably have expected that the communication would be recorded, will be questions for the fact finder. (Cf. *People* v. *Pedersen* (1978) 86 Cal.App.3d 987, 994 [150 Cal.Rptr. 577]; *People* v. *Baker* (1978) 88 Cal.App.3d 115, 123 [151 Cal.Rptr. 362].)

We do observe, however, that section 637.2 provides for an action only against "the person who committed the violation." While the first amended complaint is sufficient to state a cause of action against Melvin Kahn, it contains no allegations giving rise to a violation of section 632 on the part of the remaining defendants. Thus, as to them, the first amended complaint was properly dismissed.

The judgment below insofar as it dismissed the second amended complaint is affirmed as to all defendants, and insofar as it dismissed the first amended complaint is affirmed as to all defendants other than Melvin Kahn. ■ ■■■ The judgment dismissing the first amended

---

[7]The Kahns argue in their brief that an interpretation of section 632 as depriving a blind person of the right to record his attorney's advice would have the effect of denying such a person the equal protection of the laws under the Fourteenth Amendment to the federal Constitution, as well as freedom of speech under the First Amendment. We, of course, do not adopt such an interpretation. Nothing in the statute would prohibit a blind person from recording the advice of his attorney with the attorney's knowledge or consent, or under circumstances in which the attorney otherwise had reason to expect that the conversation was being recorded.

complaint as to Melvin Kahn is reversed[8] and remanded for further proceedings not inconsistent with the views expressed herein. Appellant is to bear costs of appeal.

Racanelli, P. J., concurred.

**ELKINGTON, J.**—I respectfully dissent.

As I read our court's controlling opinion we have, by judicial interpretation, fashioned an innovative penal statute with a coverage unintended by the Legislature. Such a statute was expressly rejected by Congress and is not to be found elsewhere among the states of the nation.

Penal Code section 631 provides: "Any person who, by means of any. . .instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection,[1] whether. . .inductively,[2] or otherwise, with any. . .telephone wire. . .or instrument. . ., or who willfully and without the consent of all parties to the communication . . .uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained. . .is punishable" etc.

---

[8]The Kahns argue that it appears from the record that the statute of limitations had expired on any alleged Penal Code section 632 violation. This argument is based upon the allegations of the first amended complaint, filed in November 1976, to the effect that the alleged recordings occurred between 1964 and July 19, 1974. While the first amended complaint alleges also that plaintiff did not discover the recordation until April 30, 1976, the Kahns argue that allegation is belied by a letter dated June 27, 1974, from plaintiff to Melvin Kahn, which was submitted with Melvin Kahn's declaration in support of a motion for summary judgment, and which makes reference to "numerous recordings. . .surreptitiously made." Thus, the Kahns argue that plaintiff had knowledge of the recordings at least by June 27, 1974, and that the action was therefore barred by the one-year period of limitations prescribed both for actions upon a statute for penalty or forfeiture (Code Civ. Proc., § 340, subd. 1) and for general tort actions (Code Civ. Proc., § 340, subd. 3).

Since this argument was not raised in the trial court, and involves a potential factual issue, its consideration on appeal would be inappropriate. We note for the guidance of the trial court on remand, however, that respondents are correct in contending that the action is one to recover a "statutory penalty or forfeiture" within the meaning of Code of Civil Procedure section 340, subdivision 1. (Cf. *Holland v. Nelson* (1970) 5 Cal.App.3d 308, 312 [85 Cal.Rptr. 117].)

[1]Any connection made with the line of a telephone company, without the consent of the company, is "unauthorized" within the meaning of section 631. (*People v. Superior Court (Young)* (1970) 13 Cal.App.3d 545, 548-549 [91 Cal.Rptr. 699].)

[2]The parties are in agreement that the instant "unauthorized" telephone connections were made "inductively."

It is pleaded in the complaint that defendant Melvin Kahn did and performed each of those acts. Yet we hold that section 631 *was not* violated, because it applies *"only to eavesdropping by a third party* and not to recording by a participant to a conversation." (Italics added.)

Penal Code section 632, as relevant, states: "Every person who, intentionally and without the consent of all parties to a confidential [telephone] communication, by means of any...recording device, eavesdrops upon or records such confidential communication...shall be punishable" etc.

Here again the complaint alleges that defendant Melvin Kahn did and performed each of those acts. However, we hold that section 632 *was* transgressed because, unlike section 631, it *does apply* "to a participant to the conversation." Such a violation, it follows, is felonious and punishable by imprisonment in state prison and a forfeiture of $3,000 (§ 637.2) *or* $2,500 (§ 632) to the other participant for each such recording, regardless of whether damages were actually suffered.

Manifestation of a legislative intent that section 631 *shall*, and section 632 *shall not*, apply "only to eavesdropping" is not readily observable.

Our controlling opinion's reliance is tripartite. It is upon: (1) the "dominant objective of the [Cal. Invasion of Privacy] act [Act], as reflected in its preamble,... 'to protect the right of privacy of the people of this state'"; (2) a law review commentary, i.e., Van Boven, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182 (hereafter *Mr. Van Boven*); and (3) certain cases of the state's Courts of Appeal, i.e., *People* v. *Wyrick* (1978) 77 Cal. App.3d 903 [144 Cal.Rptr. 38], *Forest E. Olson, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 188 [133 Cal.Rptr. 573], and *Rogers* v. *Ulrich* (1975) 52 Cal.App.3d 894 [125 Cal.Rptr. 306].

The *Act's preamble* does more than reflect a legislative desire to "protect the right of privacy of the people of this state." That protection, *it adds*, will be effected by the Act's proscription of *"eavesdropping upon private communications."* The preamble does not except section 632 from the Act's declared purpose. One who records his telephone conversation with another is patently not *"eavesdropping."* ("[E]avesdrop...: to listen secretly to what is said in private...." (Webster's New Internat. Dict. (3d ed. 1965) p. 717.) Thus, the Act's

*express* declaration of purpose eliminates a party to its "confidential telephone communication" from its coverage.

*Mr. Van Boven* asserts that California "is one of the few states to have outlawed participant monitoring by private parties." (57 Cal. L.Rev., p. 1235.) Recourse to the two *judicial opinions* cited for that proposition discloses, aside from California, only two such states, Pennsylvania and Illinois.

The first of the two, *Commonwealth* v. *Murray* (1966) 423 Pa. 37 [223 A.2d 102], concerned a statute whose "precise purpose [was] to punish those who *intercept* [italics added] telephone communications *without the consent of both parties.*" A detective's recording of an incriminating conversation with the consent of one party to the communication was held to be such an interception. Within the year the case was *disapproved* insofar as it suggested that a participant might not record his own conversation with another over a telephone that he was otherwise rightfully using. (*Commonwealth* v. *Goldberg* (1966) 208 Pa.Super. 513 [224 A.2d 91].) *Murray* may not now reasonably be deemed authoritative.[3]

---

[3]"[*Murray*] prohibits the use of incriminating evidence obtained by a private detective 'from the transcript of the illegally installed wire tape recording'. It is our view that the Murray case does not dictate an affirmance in the case at bar.... 'A subscriber has an absolute right to record his own communications and to protect the use made of his own telephone.... The statute was enacted to protect a telephone subscriber's line from the act of another person; not to safeguard it from his own act'." (*Commonwealth* v. *Goldberg, supra*, 224 A.2d 91, 92-93; see also *Commonwealth* v. *Donnelly* (1975) 233 Pa.Super. 396 [336 A.2d 632, 639] [cert. den., 424 U.S. 974 (47 L.Ed.2d 744, 96 S.Ct. 1477)].) "[*Murray*] has been distinguished in a later Pennsylvania case, Commonwealth v. Goldberg, 208 Pa.Super. 513, 224 A.2d 91 (1966), on the ground that the *Murray* case did not involve the interception by a subscriber on his own line. The *Goldberg* court held that a subscriber had a 'paramount right' to make interceptions on his own telephone line. McGuire's interception [i.e., "recording...of his telephone conversations"] in this case would seem to come within the *Goldberg* rather than the *Murray* rule,..." (*United States* v. *McGuire* (2d Cir. 1967) 381 F.2d 306, 315 [cert. den., 389 U.S. 1053 (19 L.Ed.2d 848, 88 S.Ct. 800)].) "[T]he Murray case was distinguished in a later Pennsylvania case, Commonwealth v. Goldberg, 208 Pa.Super. 513, 224 A.2d 91 (1966), on the ground that *Murray* did not involve the interception by a subscriber on his own line. The *Goldberg* court held that a subscriber had a 'paramount right' to make interception on his own telephone line. Remedio's interception in this case comes within the *Goldberg* rather than the *Murray* rule...." (United States v. Vespe (D.Del. 1975) 389 F.Supp. 1359, 1372 [affd. *sub nom.* United States v. Shaffer (1975) 520 F.2d 1369, cert. den., 423 U.S. 1051].) "[I]n *Murray*, a *third party* (private detective) listened to the conversation on the telephone extension. The Pennsylvania Supreme Court held this to be an *interception*, because permission to eavesdrop was not obtained from *both* parties to the conversation.... [¶] The distinction between the Pennsylvania and Federal statutes, we think, is immaterial to the

The other of the two judicial authorities relied upon by *Mr. Van Boven* is *People v. Kurth* (1966) 34 Ill.2d 387 [216 N.E.2d 154, 20 A.L.R.3d 409]. There the court interpreted an Illinois statute as forbidding recordation, without consent of the other party, by a participant in a telephone communication. But the statute was promptly amended to provide otherwise.[4]

Of the two *statutes* relied upon by *Mr. Van Boven* for his conclusion that of Michigan, as recodified in apparently the same language, provides that a person who "wilfully uses any device" to "record . . . any part of the *private discourse of others*" (italics added) is subject to criminal sanctions. (Mich. Stat. Ann., §§ 28.807(1), 28.807(3).) Participant recording is *not* proscribed. The other statute is of Nevada. As relevant, it recites: "[I]t is unlawful for any person to intercept or attempt to intercept any wire communication unless: (a) Such interception or attempted interception is made with the prior consent of one of the parties to the communication. . . ." (Nev. Rev. Stat., § 200.620.) Recording of one's telephone conversation may not reasonably be deemed "interception" of it. (See *Parkhurst v. Kling, supra*, 266 F.Supp. 780, 781 [fn. 3, *ante*].)

Judicial or other support (at least as of today) for *Mr. Van Boven*'s dictum that California "*is one of the few states* to have outlawed participant monitoring by private parties" (italics added) is thus completely lacking.

---

question before us. We adhere to our earlier conclusion, primarily because neither law was intended to prohibit one *party* to a telephone conversation from recording that conversation for his own purposes. The 'dirty business' sought to be terminated by the Pennsylvania statute was the *interception* and recording by *third parties* of communications without the consent of *all the parties* thereto. When recording by one of his conversation with another shall have become an 'interception' of their conversation the word 'intercept' shall have taken on a new and different meaning indeed." (*Parkhurst v. Kling* (E.D.Pa. 1967) 266 F.Supp. 780, 781.)

[4]"The *Kurth* decision . . . is not controlling as it was a judicial interpretation of a legislative intent, which legislation has been changed since that decision." (*People v. Drish* (1974) 24 Ill.App.3d 225 [321 N.E.2d 179, 183].) "Under the prior Eavesdropping Statute, . . . as interpreted by our supreme court, evidence obtained by eavesdropping devices could not be used unless the person against whom the evidence was being offered had consented to its recording. People v. Kurth, 34 Ill.2d 387, 216 N.E.2d 154. [¶] However, in 1969, the statute was amended . . . . [¶] It is clear that the statute in its present form permits evidence to be introduced against a person, even if he has not consented to the eavesdropping, if any one other person has consented." (*People v. Knight* (1975) 28 Ill.App.3d 232 [327 N.E.2d 518, 520].)

It is significant also, that while *Mr. Van Boven* insists that California has outlawed such practices, he elsewhere concedes that this may not be so. He says: "It was the intent of the drafters, and apparently the Legislature, to outlaw just such forms of consensual overhearing, unless all parties are apprised of the existence of the listener. *That intent might not be effectuated, however* . . . . [¶] Redrafting of this statute might be necessary to accomplish the intention of the Legislature, . . ." (57 Cal.L. Rev., p. 1202; italics added, fn. omitted.)

I turn to the remaining support offered for our controlling decision.

*People* v. *Wyrick, supra,* 77 Cal.App.3d 903. Without consideration of the Act's stated purpose of proscribing *"eavesdropping"* (italics added) upon private communications, the court relied upon *Forest E. Olson, Inc.* v. *Superior Court, supra,* 63 Cal.App.3d 188, *Commonwealth* v. *McCoy* (1971) 442 Pa. 234 [275 A.2d 28][5] and one of the two authorities relied upon by *Mr. Van Boven,* i.e., *People* v. *Kurth, supra,* 216 N.E.2d 154 (see fn. 4, *ante*).

*Forest E. Olson, Inc.* v. *Superior Court, supra,* 63 Cal.App.3d 188. Here the court placed its sole reliance upon the authority of *Rogers* v. *Ulrich, supra,* 52 Cal.App.3d 894, which will now be discussed.

*Rogers* v. *Ulrich, supra,* 52 Cal.App.3d 894. In a context closely paralleling that of the case at bench, Rogers filed an awkwardly fashioned two-count complaint for invasion of privacy against Ulrich. Count 1 was "for damages for recordation of a telephone conversation," which although not expressly so stated was brought, as here, under Penal Code section 632. The second count was expressly founded on section 631. Summary judgment was granted defendant Ulrich as to the first count and later, after trial, judgment was entered for him on count 2. Upon Rogers' appeal, the judgments were affirmed by Division Four of this court. Faced with the recognized ambiguity of the Act, the appellate court held that section 632 *"arguably* goes beyond the scope of section 631 in prohibiting not only eavesdropping, but also the recording of a confidential communication without the consent of all parties

---

[5]*Commonwealth* v. *McCoy, supra,* 275 A.2d 28, held that a person who records his own telephone conversation with another has "intercepted" the communication, a concept elsewhere repudiated by Pennsylvania (see fn. 3, *ante*) and, I think, by reason. As said in *Parkhurst* v. *Kling, supra,* 266 F.Supp. 780, 781: "When recording by one of his conversation with another shall have become an 'interception' of their conversation the word 'intercept' shall have taken on a new and different meaning indeed." (And see generally fn. 3, *ante*.)

to the communication." (P. 899; italics added.) But, in resolving that ambiguity, and addressing itself to the issue "whether the statute covers the recording of a conversation made by a participant rather than by a third party" (p. 898), the court stated: "Penal Code section 630 is a declaration of legislative finding and intent; *it speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included. 'Eavesdropping' is the problem the Legislature meant to deal with; 'eavesdrop' is defined in Webster's Seventh New Collegiate Dictionary (1972) as 'to listen secretly to what is said in private.' It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation.* The trial court was right in determining that appellant's evidence did not make out a case under the statute.' (Pp. 898-899; italics added, fn. omitted.)

*Rogers* v. *Ulrich* thus furnishes neither support for *People* v. *Wyrick* and *Forest E. Olson, Inc.* v. *Superior Court*, nor for the controlling opinion of this appeal. Indeed, if considered authoritative, it mandates affirmance of the judgment before us.

Nevertheless, it must be conceded that the Act contains some ambiguity. This is suggested by *Mr. Van Boven*, who advises that the Act is a product of an earlier "hodgepodge of statutes" which "left much to be desired." It is "flawed" with "ambiguities" and "deficiencies and oversights," and it "is badly in need of simplification." (57 Cal.L.Rev., *passim.*) And it has been *judicially* observed that in "some aspects the provisions of [the Act] are *patently ambiguous.*" (*People* v. *Wilson* (1971) 17 Cal.App.3d 598, 602 [94 Cal.Rptr. 923]; italics added.)

The ambiguity of the Act is also pointed up by our controlling opinion where we consider the following language of Penal Code section 633.5: "Nothing in Section 631 or 632 shall be construed as prohibiting one party to a confidential communication" from recording it in aid of law enforcement. A meaning may perhaps be inferred that since section 632 does not also so provide, it does prohibit "one party to a confidential communication" from recording it. But section 633.5 may also be deemed but an iteration of the Act's preamble, proscribing only "eavesdropping." Section 637 is also significant; it purports to permit a *party to a telephone communication* who records it without permission of the other, to freely disclose the recording to third persons without exposure to the Act's sanctions; such a statutory indulgence seems wholly at odds

with a purpose that the making of the recording nevertheless constituted a felony.

Such contradictions as appear in the Act lend force to *Mr. Van Boven*'s observation of a "hodgepodge" of "ambiguities" "badly in need of simplification," but they do not reasonably detract from the Legislature's clearly announced objective to abolish "eavesdropping" upon private communications.

The ambiguity of our immediate concern is, of course, created by section 630's stated purpose of proscribing *"eavesdropping upon private communications,"* and section 632's forbiddance of eavesdropping upon, *"or recording,"* such communications. The issue is whether, by the unqualified term "recording," the Legislature intended that the Act's sanctions apply also to a party to private communications who *does nonconsensually record* them, but cannot, and thus *does not, eavesdrop* upon them.

An ambiguous statute should be read by us *"in the light of the objective sought to be achieved by it, . . ."* (*People* v. *Carroll* (1970) 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400]; italics added.) Its discordant provisions should be *"reconciled,"* and *"harmonized,"* and the *"integrity of both"* should be maintained if at all possible. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]; *People* v. *Trieber* (1946) 28 Cal.2d 657, 661 [171 P.2d 1]; *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; all italics added.)

Such a reasonable accommodation of the two code sections does not appear difficult.

In drafting a statute proscribing "eavesdropping" upon private telephone communications it would soon become apparent that a closely related evil, and possible "loophole," would be the nonconsensual *recording* of such a communication by a third party which, at least debatably, would not come under the narrow definition of "eavesdropping." To cope with such an evil the Legislature might reasonably in drafting section 632, have added the words "or records" to the word "eavesdrops," relying upon section 630's expressly stated purpose, to give the statute the meaning of *recording under circumstances where the malefactor, if actually listening, would have been eavesdropping..*

Other principles and rules of statutory construction, in my opinion, mandate such a construction.

It is, of course, a fundamental rule of statutory interpretation that the court "*should ascertain the intent of the Legislature so as to effectuate the purpose of the law.*" (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749], italics added; *People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 452 P.2d 33]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

Reasonably, and authoritatively, the Legislature's purpose will best be perceived when it is *expressly* stated in the statute. "[O]rdinarily it is the rule that, when the law-making power distinctly states its design in the enactment of a particular statute, *no room is left for construction,...*" (*Coulter* v. *Pool* (1921) 187 Cal. 181, 185 [201 P. 120], italics added; *Federoff* v. *Birks Bros.* (1925) 75 Cal.App. 345, 349 [242 P. 885].)

As has been noted, Penal Code section 630 is a preamble to the Act. It "declares" the legislative purpose to be the prevention "of *eavesdropping* upon private communications" (italics added) thus to "protect the right of privacy of the people of this state." By definition one who is a party to a communication cannot "*eavesdrop*" upon it. The Act's express declaration of purpose accordingly eliminates a *party* to its described telephone "communication" from its coverage. As stated by *Coulter* v. *Pool, supra*, 187 Cal. 181, 185, and *Federoff* v. *Birks Bros., supra*, 75 Cal.App. 345, 349, "no room is left for construction,..."

It may properly be emphasized at this point that we are concerned with a penal statute imposing a possible state prison term of three years for its violation. "When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted." (*People* v. *Ralph* (1944) 24 Cal.2d 575, 581 [150 P.2d 401].) The accused violator "is entitled to the benefit of every reasonable doubt...as to the...construction of language used in a statute." (*In re Tartar* (1959) 52 Cal.2d 250, 257 [339 P.2d 553]; and see *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675].)

This principle is of constitutional concern. It is an established principle of constitutional law that "...a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally v. General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]; *Bowland v. Municipal Court* (1976) 18 Cal.3d 479, 491 [134 Cal.Rptr. 630, 556 P.2d 1081].) "'If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.'" (*Shealor v. City of Lodi* (1944) 23 Cal.2d 647, 653 [145 P.2d 574]; *County of Los Angeles v. Riley* (1936) 6 Cal.2d 625, 629 [59 P.2d 139, 106 A.L.R. 903].)

Moreover, as plaintiff urges and as pointed out, the Act imposes treble damages, or cumulative *forfeitures* of $2,500 or $3,000 for each violation without regard to the actual damages suffered. "The law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; and see *Irwin v. Irwin* (1977) 69 Cal.App.3d 317, 322 [138 Cal.Rptr. 9].) "Of two or more possible constructions, 'the construction which avoids a forfeiture should be favored.'" (*Flagg v. Andrew Williams Stores, Inc.* (1954) 127 Cal.App.2d 165, 176 [273 P.2d 294].)

It must also reasonably be concluded that a breach of trust by a telephone communicant in recording his own conversation with another presents far less of a public evil than third-party interception, or eavesdropping. Such a rationale, we think, is widely recognized. *Mr. Van Boven* concedes that "the chilling effect of participant monitoring is generally less than that of third-party surveillance," and it is "relatively innocuous." It should, he says, "be classed as a misdemeanor at most and possibly freed from criminal sanctions altogether." (57 Cal.L.Rev., pp. 1239, 1240 and fn. 332.) It seems most unlikely that the Legislature intended, nevertheless, to visit the awesome penalties of the Act upon persons situated as was Melvin Kahn who, guilty of neither eavesdropping nor interception, simply made a recording of his own telephone conversation with another.

It is next noted that the Act has a federal counterpart in title 18, United States Code, chapter 119, sections 2510-2520, entitled, "Wire Interception and Interception of Oral Communications." Section 2511(2)(d) of that statute, as relevant, provides: "*It shall not be unlawful* under this chapter for a person...to intercept a wire or oral communication *where such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception...." (Italics added.)

The federal statute comports with the following rationale of Justice Byron White, concurring in *Katz* v. *United States* (1967) 389 U.S. 347, 363, fn. [19 L.Ed.2d 576, 589, 88 S.Ct. 507]: "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. The Fourth Amendment does not protect against unreliable (or law-abiding) associates....It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another." Lesser federal courts appear to have consistently applied that rationale in respect of the federal statute, and related constitutional principles. In *United States* v. *DeVore* (4th Cir. 1970) 423 F.2d 1069, 1074 (cert. den., 402 U.S. 950 [29 L.Ed.2d 119, 91 S.Ct. 1604]), the court said: "When a defendant has a conversation with another person he relinquishes his right of privacy with respect to that person. He may constitutionally complain of breach of privacy by an eavesdropper, but not of a breach of trust by the person he chooses to trust, however unwisely. Since the participants in a conversation are privileged to tell what was said, it necessarily must follow that a recording of what was said may either be used to corroborate the revelation, or simply as a more accute [*sic*] means of disclosure." (See also *Koran* v. *United States* (5th Cir. 1969) 408 F.2d 1321, 1323-1324 [cert. den., 402 U.S. 948 (29 L.Ed.2d 118, 91 S.Ct. 1603)]; *United States* v. *Kaufer* (2d Cir. 1969) 406 F.2d 550, 551-552 [affd. without opn. (1969) 394 U.S. 458 (22 L.Ed.2d 414, 89 S.Ct. 1223)]; *Holt* v. *United States* (10th Cir. 1968) 404 F.2d 914, 919-920 [cert. den., 393 U.S. 1086 (21 L.Ed.2d 779, 89 S.Ct. 872)].) It is reasonable to assume that had California's Legislature intended to depart from this widely accepted rationale it would have said so in unmistakable language.

Consideration is overdue perhaps, of the related expressions on the subject before us by California's Supreme Court. (See *Auto Equity*

*Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

*Tavernetti* v. *Superior Court* (1978) 22 Cal.3d 187 [148 Cal.Rptr. 883, 583 P.2d 737]. The high court upheld the Act against the People's contention that the fruits of *third-party* eavesdropping upon a telephone communication should not be suppressed as evidence. In doing so, it stated (p. 192): "When the contents of a private wire communication, e.g., a telephone conversation, *are intercepted by one not a party to the communication*, disclosure is to be penalized" (italics added) by the Act.

*People* v. *Conklin* (1974) 12 Cal.3d 259 [114 Cal.Rptr. 241, 522 P.2d 1049]. The defendant had "installed [and used] a system designed to *intercept*" (p. 262, fn. 1) private telephone conversations of others. The court held that the Act's requirement that all parties to a telephone communication give their consent to a *third-party interception* of it was not in conflict with preemptive federal law. It was iterated (p. 272, fn. 12) that the Act prohibits "the *interception* of wire communications." (Italics added.) No suggestion appears that the Act forbids monitoring or recording by a party to the communication.

*People* v. *Murphy* (1972) 8 Cal.3d 349 [105 Cal.Rptr. 138, 503 P.2d 594] (cert. den., 414 U.S. 833 [38 L.Ed.2d 68, 94 S.Ct. 173]). Here the contention was that the recording of a telephone conversation was violative of an accused's Fourth Amendment rights. It was held that the constitutional guaranty was "intended to protect...persons only from the 'uninvited ear'..., not from a breach of trust by one of the parties to the conversation...." (P. 359.) Further, the court observed: "We ...perceive no distinction between the risk one faces that the person in whom he confides will later breach that trust by testifying about the conversation and the risk that such person has already betrayed him and is instantaneously transmitting their conversation electronically to police equipped with radio receivers.... 'For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to [the agent] fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording.'" (P. 360.)

Two cases of the state's Courts of Appeal are also instructive.

*Rogers* v. *Ulrich, supra,* 52 Cal.App.3d 894. This authority has been fully discussed. (See pp. 820 - 821, *ante.*)

*People* v. *Buchanan* (1972) 26 Cal.App.3d 274, 288 [103 Cal.Rptr. 66]. "[T]he prohibitory sections of the [Act] expressly apply *only* to intentional wiretapping [i.e., § 631] and *eavesdropping.*" (Italics added.)

Mr. Witkin's review of the Act found no purpose to hold a party to a telephone communication subject to its sanctions. He concluded: "New P.C. 631 covers the subject of repealed P.C. 640...i.e., the crime of unauthorized *interception* of communications 'without the consent of all parties'" and that "New P.C. 632 covers the subject of repealed P.C. 653j, i.e., *eavesdropping* on a 'confidential communication' *by means of 'any* electronic amplifying or *recording device.*'" (Witkin, Cal. Evidence 2d (1977 supp. to ch. II) Exclusion of Illegally Obtained Evidence, §§ 147B-147C, pp. 301-302; italics added.)

For all of these reasons I am of the opinion that our holding in respect of section 632 of the Act is erroneous.

For yet another, and heretofore undiscussed, reason the result we have reached is believed by me to be legally unacceptable.

Our controlling opinion's holding rests *only* upon Penal Code section 632. Plaintiff Warden's contentions insofar as they are based upon section 631 have been rejected.

A strict requirement for the application of section 632 is that its subject be a "*confidential communication,*" which is defined to include "any communication carried on in such circumstances as may reasonably indicate that any party to such communication desires it to be confined to such parties,..."

Plaintiff Warden and defendant Melvin Kahn were, respectively, attorney and client. The telephone communications of the case concerned Warden's legal representation of Kahn in "disputes and litigations" with others.

In respect of a "confidential communication" between a lawyer and client, the client is the "holder of the privilege" (Evid. Code, § 953); the lawyer is not. If the client shall "waive" the privilege he will have terminated its confidentiality (Evid. Code, § 912). *The lawyer "is in no*

*position to assert* [*such*] *a privilege on his own behalf.*" (*Abbott* v. *Superior Court* (1947) 78 Cal.App.2d 19, 21 [177 P.2d 317]; italics added.) (And see generally Witkin, Cal. Evidence (2d ed. 1966) Witnesses, § 794 et seq., p. 739 et seq.) Here the client must reasonably be deemed, as a matter of law, to have waived the confidentiality of his telephone communications with his attorney. It follows that the latter, plaintiff Lew Warden, had stated no cause of action under Penal Code section 632.

I would affirm the judgment of the superior court in its entirety.

A petition for a rehearing was denied January 3, 1980. Elkington, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied February 7, 1980. Bird, C. J., was of the opinion that the petition should be granted.